**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SPECIFIX FASTENERS PTY LTD, *et al.*, | ) | CASE NO.:    1:15-cv-01366-CAB |
| | ) | |
| Plaintiffs, | ) | Judge Christopher A. Boyko |
| | ) | |
| v. | ) | |
| | ) | |
| ALLFASTENERS USA LLC, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR**
**LACK OF STANDING AND FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

Page

I.     BACKGROUND ................................................................. 2

II.    PROCEDURAL HISTORY ................................................. 3

III.   LEGAL STANDARDS ........................................................ 4

       *Article III Standing* ...........................................................4

       *Federal Rule of Civil Procedure 12(b)(1)* ............................6

       *Federal Rule of Civil Procedure 12(b)(6)* ............................6

IV.    LAW AND ANALYSIS ....................................................... 7

       A.    **Ajax's Cause of Action for Infringement of the '709 Patent
             Must be Dismissed**.............................................7

             1.    **Ajax Incurably Lacks Standing to Maintain An
                   Infringement Action**.............................................8

                   a.    *There is No Article III Injury-in-Fact Because Ajax
                         was Not an Owner Or Exclusive Licensee of The
                         '709 Patent at the Time of Filing this Action*................... 8

                   b.    *There is No Article III Causation Because, As A
                         Matter Of Law, A Method Claim Cannot Be
                         Infringed By The Manufacture And Sale Of A
                         Product* .......................................................... 10

             2.    **Ajax Fails to State a Claim of Infringement of the '709
                   Patent under Any Reasonable Claim Construction of
                   'Moveable Member'**.............................................12

                   a.    *The Law of Patent Infringement* ................................. 12

                   b.    *As a Matter of Law, the Accused Instrumentality
                         Cannot Literally Infringe the '709 Patent Because it
                         Practices the Prior Art*.......................................... 13

                   c.    *As a Matter of Law, the Accused Instrumentality
                         Cannot Infringe Under the Doctrine Of Equivalents
                         Because Equivalents Cannot Encompass the Prior
                         Art* ................................................................ 15

       B.    **Ajax Fails to Sufficiently Plead Violations of the Lanham Act**..................17

             1.    **Trade Dress Infringement**..........................................17

                   a.    *Ajax Lacks Standing to Assert Trade Dress
                         Infringement*........................................................ 18

                   b.    *Ajax Fails to State a Claim of Trade Dress
                         Infringement* ...................................................... 19

2. **False Advertising by Misrepresentation of Geographic Origin and Quality** ...................................................................20

      *a. Ajax Lacks Standing to Assert a Claim under 15 U.S.C. § 1125(a)(1)(B)* .................................................. 21

      *b. Ajax Fails to Sufficiently Allege a Misrepresentation of Geographic Origin under the FTC's 'Made in the USA' Standard* ............................... 24

      *c. Ajax Fails to Sufficiently Allege a Misrepresentation of Quality under the Fastener Quality Act* .................................................. 25

C. **Ajax Fails to Sufficiently Plead Misappropriation of Any Trade Secrets** ....................................................................26

    1. **Ajax Lacks Standing to Assert Trade Secret Misappropriation** ................................................26

    2. **Ajax Fails to Sufficiently Allege Trade Secret Misappropriation** ................................................27

D. **Ajax Fails to Sufficiently Plead that Defendants Breached the Agreement** .......................................................................28

    1. **Ajax Lacks Standing to Assert Breach of Contract** ..........................28

    2. **Ajax Fails to Sufficiently Allege Breach of Contract** ........................30

V. **CONCLUSION** ............................................................................. 30

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*A.P. Deauville, LLC v. Arion Perfume & Beauty, Inc.*,
 2014 U.S. Dist. LEXIS 173073 (N.D. Cal. Dec. 12, 2014) ...............................................25, 26

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*,
 280 F.3d 619 (6th Cir. 2002) ....................................................................................................19

*Allen v. Wright*,
 468 U.S. 737 (1984) ...........................................................................................................4, 5, 23

*Alps South, LLC v. Ohio Willow Wood Co.*,
 787 F.3d 1379 (Fed. Cir. 2015) ..................................................................................................8

*Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery*,
 185 F.3d 606 (6th Cir. 1999) ...............................................................................................20, 21

*Am. Roll Form Corp. v. Chamberlain Group, Inc.*,
 2015 U.S. Dist. LEXIS 26560 (N.D. Ohio Mar. 2, 2015) .......................................................20

*American Rock Mechanics, Inc. v. Thermex Energy Corp.*,
 80 Ohio App.3d 53, 608 N.E.2d 830 (1992) ............................................................................28

*Ass'n of Cleveland Fire Fighters v. City of Cleveland*,
 502 F.3d 545 (6th Cir. 2007) ......................................................................................................7

*Barany-Snyder v Weiner*,
 539 F.3d 327 (6th Cir. 2008) ......................................................................................................7

*Beard v. New York Live Ins. & Annuity Corp.*,
 No. 12AP-977, 2013 Ohio 3700 (10th Ohio App.) ...................................................................29

*Becton, Dickinson & Co. v. Tyco Healthcare Croup*,
 616 F.3d 1249 (Fed. Cir. 2010) ................................................................................................13

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) ...............................................................................................................7, 20

*In re Bill of Lading Transmission and Processing Sys. Patent Litig*,
 681 F.3d 1323 (Fed. Cir. 2012) ................................................................................................11

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co., KG*,
 224 F.3d 1308 (Fed. Cir. 2000) ................................................................................................12

*Cardinal Chem. Co. v. Morton Int'l*,
    508 U.S. 83 (1993)............................................................................16

*Cedars-Sinai Medical Ctr. v. Watkins*,
    11 F.3d 1573 (Fed. Cir. 1993)............................................................6

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)..............................................................................5

*Clark v. Walt Disney Co.*,
    642 F. Supp. 2d 775 (S.D. Ohio 2009) ......................................13, 15

*Cleveland Thermal Steam Distrib., LLC v. Carlyle Leader, LLC*,
    2015 U.S. Dist. LEXIS 58265 (N.D. Ohio May 4, 2015)..................28

*Coyne v. American Tobacco Company*,
    183 F. 3d 488 (6th Cir. 1999) ...........................................................10

*Creelgroup, Inc. v. NGS American, Inc.*,
    518 Fed. Appx. 343 (6th Cir. 2013)............................................28, 29

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
    648 F.3d 365 (6th Cir. 2011) ..............................................................7

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*,
    109 F.3d 275 (6th Cir. 1997) ............................................................19

*Dana Corp. v. Blue Cross & Blue Shield Mut.*,
    900 F.2d 882 (6th Cir. 1990) ..............................................................6

*Dawn Equip. Co. v. Kentucky Farms, Inc.*,
    140 F.3d 1009 (Fed. Cir. 1998)..........................................................16

*DiPaolo v. Princeton Search, LLC*,
    2014 U.S. Dist. LEXIS 15580 (N.D. Ohio Feb. 6, 2014)..................29

*Dow Chem Co. v. Sumitomo Chem. Co.*,
    341 F.3d 1370 (Fed. Cir. 2001)..........................................................13

*Dreisbach v. Murphy*,
    658 F.2d 720 (9th Cir. 1981) .............................................................24

*Fair Wind Sailing, Inc. v. Dempster*,
    764 F.3d 303 (3rd Cir. 2014) ......................................................19, 20

*Flast v. Cohen*,
    392 U.S. 83 (1968)......................................................................17, 20

*In re Foreclosure Cases*,
 2007 U.S. Dist. LEXIS 84011 (N.D. Ohio Oct. 31, 2007) ........................................................6

*Fraker v. Bayer Corp.*,
 2009 U.S. Dist. LEXIS 125633 (E.D. Cal. Oct. 2, 2009) ......................................................24

*Frisch's Restaurant, Inc. v. Shoney's, Inc.*,
 759 F.2d 1261 (6th Cir. 1985) ................................................................................................19

*Gaus v. Conair Corp.*,
 363 F.3d 1284 (Fed. Cir. 2004)...............................................................................................16

*General Motors Corp. v. Lanard Toys, Inc.*,
 468 F.3d 405 (6th Cir. 2006) .............................................................................................18, 19

*Gray v. Meijer, Inc.*,
 295 F.3d 641 (6th Cir. 2002) ..................................................................................................18

*Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*,
 730 F.3d 494 (6th Cir. 2013) ..................................................................................................18

*H.R. Techs., Inc. v. Astechnologies, Inc.*,
 275 F.3d 1378 (Fed. Cir. 2002).................................................................................................8

*Honeywell Int'l Inc. v. ICM Controls Corp.*,
 45 F. Supp. 3d 969, 988 (D. Minn. 2014)..........................................................................25, 26

*Insituform Technologies v. Cat Contracting, Inc.*,
 161 F.3d 688 (Fed. Cir. 1998)................................................................................................12

*Int'l Gamco, Inc. v. Multimedia Games, Inc.*,
 504 F.3d 1273 (Fed. Cir. 2007).................................................................................................8

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal.*,
 248 F.3d 1333 (Fed. Cir. 2001)...............................................................................................10

*Jaro Transp. Servs. v. Grandy*,
 2006 U.S. Dist. LEXIS 62932 (N.D. Ohio Sept. 5, 2006)......................................................27

*Jarupan v. Hanna*,
 173 Ohio App. 3d 284, 2007 Ohio 5081, 878 N.E.2d 66 (Ohio Ct. App. 2007) ....................30

*Joy Techs., Inc. v. Flakt, Inc.*,
 6 F.3d 770 (Fed. Cir. 1993) ....................................................................................................11

*Kahn v. Gen. Motors, Corp.*,
 135 F.3d 1472 (Fed. Cir. 1998)..........................................................................................12, 13

*Keene Corp. v. United States,*
    508 U.S. 200 (1993).................................................................................26, 28

*Kegel Co. v. AMF Bowling, Inc.,*
    127 F.3d 1420 (Fed. Cir. 1997).................................................................12

*Laird v. Tatum,*
    408 U.S. 1 (1972)........................................................................................5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    134 S. Ct. 1377 (2014)...................................................................... *passim*

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)................................................................................4, 5

*Mar Oil Co. v. Korpan,*
    2011 U.S. Dist. LEXIS 121706 (N.D. Ohio Oct. 20, 2011) .....................28

*Mas-Hamilton Group v. LaGard, Inc.,*
    21 F. Supp. 2d 700 (E.D. Ky. 1997) ........................................................14

*McKinney v. Bayer Corp.,*
    744 F. Supp. 2d 733 (N.D. Ohio 2010).......................................................7

*Mendenhall v. Cedarapids, Inc.,*
    5 F.3d 1557 (Fed. Cir. 1993)..............................................................10, 12

*Mettke v. Hewlett Packard Co.,*
    2012 U.S. Dist. LEXIS 49164 (S.D. Ohio April 6, 2012) ........................16

*Mezibov v. Allen,*
    411 F.3d 712 (6th Cir. 2005) .....................................................................7

*Millennium Imp. Co. v. Sidney Frank Importing Co.,*
    2004 U.S. Dist. LEXIS 11871 (D. Minn. June 11, 2004)........................22

*National Railroad Passenger Corp. v. National Assn. of Railroad Passengers,*
    414 U.S. 453 (1974)..................................................................................17

*New Colt Holding Corp. v. RJG Holdings of Fla., Inc.,*
    312 F. Supp. 2d 195 (D. Conn. 2004).......................................................23

*Noah Sys., Inc. v. Intuit Inc.,*
    675 F.3d 1302 (Fed. Cir. 2012).................................................................14

*Paice LLC v. Toyota Motor Corp.,*
    504 F.3d 1293 (Fed. Cir. 2007).................................................................16

vi

*Paradise Creations, Inc. v. U V Sales, Inc.*,
    315 F.3d 1304 (Fed. Cir. 2003)........................................................................10

*Pers. Computer Sys. v. Cent. Knox, Inc.*,
    2012 U.S. Dist. LEXIS 46035 (E.D. Tenn. Mar. 30, 2012)....................................22

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) .............................................13

*Prakash v. Altadis U.S.A., Inc.*,
    2012 U.S. Dist. LEXIS 46337 (N.D. Ohio Mar. 30, 2012) .........................23, 24

*Rainworks Ltd. v. Mill-Rose Co.*,
    622 F. Supp. 2d 650 (N.D. Ohio 2009)........................................................27

*RMI Titanium Co. v. Westinghouse Elec. Corp.*,
    78 F.3d 1125 (6th Cir. 1996) ............................................................6

*Schering-Plough Healthcare Prods. v. Schwarz Pharma, Inc.*,
    586 F.3d 500 (7th Cir. 2009) ..............................................................21

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
    402 F.3d 1198 (Fed. Cir. 2005)........................................................8

*Steel Co. v. Citizens for Better Environment*,
    523 U.S. 83 (1998).........................................................................5

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002)......................................................14

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012)......................................................11

*Tyco Healthcare Group LP v. Ethicon Endo-Surgery, Inc.*,
    587 F.3d 1375 (Fed. Cir. 2009).......................................................8

*United States v. Richardson*,
    418 U.S. 166 (1974).......................................................................5

*United States v. Ritchie*,
    15 F.3d 592 (6th Cir. 1994) ...........................................................6

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
    454 U.S. 464 (1982)................................................................4, 5, 27

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996).................................................12, 13

vii

*Wago Verwaltungsgesellschaft Mbh v. Rockwell Automation*,
  2012 U.S. Dist. LEXIS 30703 (N.D. Ohio Mar. 7, 2012) ......................................13

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997).........................................................................................12, 15

*Warth v. Seldin*,
  422 U.S. 490 (1975).................................................................................................5

*WiAV Solutions LLC v. Motorola, Inc.*,
  631 F.3d 1257 (Fed. Cir. 2010)..........................................................................5, 10

*Wilson Sporting Goods Co. v. David Geoffrey & Associates*,
  904 F.2d 677 (Fed. Cir. 1990)............................................................................15, 16

*Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*,
  19 F.3d 1418 (Fed. Cir. 1996)................................................................................16

**Statutes**

15 U.S.C. § 45...................................................................................................................24

15 U.S.C. §§ 1125 *et. seq.*.................................................................................... *passim*

15 U.S.C. § 5403.........................................................................................................22, 25

15 U.S.C. § 5407.................................................................................................................25

35 U.S.C. §§ 101 *et. seq.*..................................................................................................10

35 U.S.C. § 112(f).............................................................................................................14

35 U.S.C. § 271(a) ............................................................................................................11

35 U.S.C. § 281...................................................................................................................8

Ohio Revised Code §§ 1333.61 *et seq.*....................................................................3, 4, 26

**Other Authorities**

Federal Rule of Civil Procedure 10(c) ...............................................................................7

Federal Rule of Civil Procedure 12(b)(1) ..........................................................................6

Federal Rule of Civil Procedure 12(b)(6) .......................................................................6, 7

Federal Rule of Civil Procedure 19 ...................................................................................1

Article III, Section 2 of the United States Constitution ........................................ *passim*

ACME Operations Pty Ltd. ("Ajax") lacks standing to assert the causes of action set forth in its original Complaint.  (ECF # 1).  This absence of a justiciable controversy at inception of the suit is fatal and cannot be retroactively cured by Ajax.[1]  But, even if the Court has subject matter jurisdiction, the Complaint still should be dismissed because Ajax failed to plausibly allege the essential elements for each asserted cause of action.  The Complaint lacks factual allegations of specific harm to any protectable legal interest held by Ajax.  Instead, it is filled with speculation, generalizations, and legal conclusions, epitomizing the 'threadbare recitals' that as a matter of law cannot withstand a motion to dismiss under Fed. R. Civ. P. 12.

In fact, the Complaint is devoid of allegations sufficient to show a causal nexus between any purported harm and Defendants' AllFasteners USA LLC, AllFasteners Enterprises LLC, and AllFasteners LA LLC (collectively, "AllFasteners" or "Defendants") alleged conduct.  The 'Factual Background' of the Complaint has sixty (60) paragraphs of content, yet fails to correct the deficiencies that plague the four counts.  (ECF # 1 at ¶¶ 13-72).  Instead, the Complaint advances an incomplete interpretation of a business relationship that went askew and Ajax's ensuing sour grapes.  Each count in the Complaint suffers from the same fatal deficiency: Ajax has not alleged and cannot allege that it is a party with redress-able rights.

Thus, Defendants request that this Court grant with prejudice their Motion To Dismiss For Lack Of Standing And Failure To State A Claim under Fed. R. Civ. P. 12(b)(1) & 12(b)(6).

---

[1] ACME Engineered Holdings Pty Ltd ("Holdings") and Specifix Fasteners Pty Ltd ("Specifix") were newly listed plaintiffs in the First Amended Complaint (the "FAC") filed on October 27, 2015.  (ECF # 35).  ACME Equipment Pty Ltd ("Equipment") was added in the Second Amended Complaint (the "SAC") filed on October 28, 2015.  (ECF # 37).  Citation is made to the original Complaint throughout this brief since standing is measured at inception of the suit.  However, where relevant, reference is made to corresponding citations from the FAC and SAC, notwithstanding Ajax's failure to seek leave to amend the pleadings a second time or join parties under Fed. R. Civ. P. 19 and/or 20 – motions AllFasteners would have opposed.  If appropriate, reference to Ajax, Holdings, Specifix, and Equipment may collectively be referred to as "Plaintiffs."

## I.    BACKGROUND

Blind bolts are fasteners that can be installed from just one side of a structure.  (ECF # 1 at ¶14; ECF # 1-4 at 1:6-15).  Such fasteners are used in constructing cell phone towers and wind turbines.  (ECF # 1 at ¶13).  Ajax's ONESIDE™ blind bolt assemblies consist of a solid washer (D), a split washer (C) (that can collapse and pass through a hole), and a bolt (B) with a tail adapted to engage the installation tool (A).  (*Id*. at ¶¶ 14, 15; ECF # 1-8 at pp. 4-6).  This tool is used to install the assembly.



The claims of the asserted patent, United States Patent No. 7,373,709 ("the '709 Patent"), are directed to a specific method of installing specific fasteners from one side of a hole.  (ECF # 1-4 at 10:26-27).  The claims require a 'moveable member' that engages the bolt engagement portion (of the tool) and the tool engagement portion (of the bolt).  (*Id*. at 10:58-63).  The patent was granted because the prior art lacked a 'moveable member.'  (*Id*. at 1:34-38).  The 'moveable member' purportedly improved upon the prior art feature of threaded engagement described in PCT Application No. WO 00/19113 ("the '113 PCT").  (*Id*.).  In the '709 Patent, the patentee distinguished itself over the prior art by pointing out the failings of the '113 PCT, writing:

> While the system described in WO 00/19113 works well, it has now been improved to provide additional advantages. The operation of ***threading*** and unthreading the bolt from the tool has been sometimes perceived by users as ***tedious***, and the tool has in some cases been damaged by careless use.

(*Id*.) (emphasis added).  *See* the '113 PCT at Exh. A.  Citations to Exhibits A through E reference attachments to the Declaration of Christopher Comiskey filed herewith.

In 2012, Ajax and AllFasteners began a business relationship where Ajax supplied ONESIDE blind bolt assemblies to AllFasteners, who distributed them in the United States. (ECF # 1 at ¶ 28).  But, there was no formal distribution agreement in place.  (*Id*. at ¶¶ 29, 45).

Even so, each party took steps to promote sales of the ONESIDE assemblies. (*Id*. at ¶¶ 34-36). As part of those efforts, Ajax <u>expressly authorized</u> AllFasteners to share "material specifications, manufacturing technology and know-how" to the public to "effectively market the ONESIDE." (*Id*. at ¶ 64). Any similarity between marketing materials of the parties came out of a "collaborative process" in which they "authorized" joint advertising. (*Id*. at ¶¶ 34-36). Because Ajax already had another ONESIDE reseller in the U.S., AllFasteners' <u>right to sell</u> the ONESIDE in the U.S. was not exclusive. (*Id*. at ¶ 25). Yet, Ajax apparently believed that the ONESIDE was the only blind bolt AllFasteners was <u>permitted to sell</u>. (*Id*. at ¶ 29; FAC at ¶ 50).

In January 2015, Ajax requested that AllFasteners enter into a written Distributor Agreement to formally limit AllFasteners' ability to sell blind bolts that could compete with the ONESIDE. (*Id*. at ¶45). AllFasteners' ultimately rejected Ajax's request, and instead began offering its own blind bolt assembly alongside the ONESIDE. (*Id*. at ¶¶ 45-46).

## II.    PROCEDURAL HISTORY

On July 9, 2015, Ajax filed the present action alleging claims for (1) patent infringement; (2) Lanham Act violations under 15 U.S.C. §§ 1125 *et. seq*.; (3) misappropriation of trade secrets under Ohio Rev. Code §§ 1333.61 *et seq*.; and (4) breach of contract. (ECF # 1). Count I alleged that Ajax had a right to exclude others from practicing the method claims of the '709 Patent, and that Ajax generally had been harmed by AllFasteners infringing upon that right by the manufacture and sale of a product: the NexGen2 bolt assembly. (*Id*. at ¶ 17, 73-78). Count II alleged harm to Ajax's ostensible trade dress rights by AllFasteners' purported copying, and that misrepresentations of fact by AllFasteners caused a generalized commercial harm to Ajax. (*Id*. at ¶ 79-85). Counts III and IV alleged that Ajax owned trade secrets that were shared under a confidentiality agreement (between non-parties to this case), and generally alleged harm from a purported misappropriation of the trade secrets and breach of the agreement. (*Id*. at ¶ 86-94).

3

On October 20, 2015, the Court held its second in-person status conference with the parties. (ECF # 31). Rather than move forward on Ajax's Motion for Injunctive Relief (*see* related briefing at ECF # 5, 22, and 25), the Court held discovery in abeyance and set a briefing schedule to review AllFasteners' arguments concerning Ajax's lack of standing. (*Id*.).

On October 27, 2015, Ajax filed its First Amended Complaint ("FAC"). (ECF # 35). No new claims were added, but two additional plaintiffs were listed, Holdings and Specifix. (*Id*.). The next day, because Ajax filed its FAC less than 24 hours before AllFasteners was to file their dispositive motion, the parties stipulated[2] to a new briefing schedule that extended the dispositive motion deadline to November 9, 2015. (ECF # 36). Later that same day, Ajax filed a Second Amended Complaint ("SAC"). (ECF # 37). Substantively, the only material difference between the FAC and the SAC was the listing of yet another new plaintiff, Equipment. (*Id*.).

## III. LEGAL STANDARDS

### *Article III Standing*

Article III, § 2 of the United States Constitution confines the jurisdiction of federal courts to adjudication of actual "cases" and "controversies." *See Allen v. Wright*, 468 U.S. 737, 750 (1984); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The doctrine of constitutional standing serves to identify which disputes meet the case-or-controversy requirement. *Allen*, 468 U.S. at 750. Parties who do not possess Article III standing do not meet this requirement and may not litigate in the courts of the United States. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475 (1982).

To meet the Article III standing requirement, a litigant seeking to invoke the court's authority must allege that the putatively unlawful conduct of which it complains has caused the litigant to personally suffer a cognizable injury to its own legally protected interest. *See Allen*,

---

[2] The Court entered the parties' stipulation with a non-document order on November 2, 2015.

468 U.S. at 751; *Valley Forge*, 454 U.S. at 472.  In addition, Article III requires the litigant to allege that there is a causal connection between the litigant's alleged injury[3] and the putatively unlawful conduct of the defendant, and that this injury is likely to be redressed should the court grant the relief requested.  *Allen*, 468 U.S. at 751; *Valley Forge*, 454 U.S. at 472.  Indeed, the Supreme Court has established that "the irreducible constitutional minimum of standing contains three elements:" injury-in-fact, causation, and redressability.  *Lujan*, 504 U.S. at 560.

Except when the legally protected interests are grounded solely in the Constitution or in common law, a statute will dictate the standing analysis since it creates the relevant protected interest.  *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *see, e.g.*, *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010).  The statute must be consulted to determine: (i) what class of plaintiffs; (ii) properly hold what kind of right; (iii) that may be subject to what kinds of injury; (iv) as a 'fairly traceable' result; (v) of what actions by a defendant.  *See WiAV Solutions*, 631 F.3d at 1264.  "In sum, the question . . . is whether [the plaintiff] falls within the class of plaintiffs whom Congress has authorized to sue under [the statute at issue]."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014).

Standing, like other bases of jurisdiction, must be present at the inception of the lawsuit.  *Lujan*, 504 U.S. at 570 n.5.  Before proceeding to the merits, federal courts must determine whether standing was present when the lawsuit was first filed.  *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94-95 (1998).

---

[3] The nature of the injury that must be established has been described by the Supreme Court variously as: a "judicially cognizable" injury, *Allen*, 468 U.S. at 754; a "personal" injury, *Valley Forge*, 454 U.S. at 485; a "distinct and palpable" injury, *Warth*, 422 U.S. at 501; a "particular concrete" injury, *United States v. Richardson*, 418 U.S. 166, 177 (1974); or a "specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 14 (1972).  "[A]bstract," "conjectural," or "hypothetical" injury is insufficient to meet the Article III requirement for injury.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).

*Federal Rule of Civil Procedure 12(b)(1)*

A motion to dismiss pursuant to Rule 12(b)(1) challenges the court's subject matter jurisdiction.  Under Sixth Circuit law,[4] Rule 12(b)(1) motions generally fall into two categories: facial attacks and factual attacks.  Fed. R. Civ. P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  A facial attack challenges the pleading itself.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134-35 (6th Cir. 1996).  On such an attack, the Court must take all material allegations in the complaint as true, and construe them in the light most favorable to the nonmoving party.  *RMI*, 78 F.3d at 1134.

In contrast, a factual attack is a challenge to the factual existence of subject matter jurisdiction.  *Id.* at 1135.  The Court's inquiry then is limited to determining whether the challenged pleadings set forth allegations sufficient to show the Court that it has jurisdiction over the subject matter; "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*.  In response to a such a factual challenge, the plaintiff "bears the burden of demonstrating standing and must plead its components with specificity."  *In re Foreclosure Cases*, 2007 U.S. Dist. LEXIS 84011, *2 (N.D. Ohio Oct. 31, 2007) (Boyko, J.) (quoting *Coyne v. American Tobacco Company*, 183 F. 3d 488, 494 (6th Cir. 1999)).

*Federal Rule of Civil Procedure 12(b)(6)*

Under a Rule 12(b)(6) challenge, all factual allegations that are plausible on their face are taken as true and construed in a light most favorable to the plaintiff.  *Dana Corp. v. Blue Cross & Blue Shield Mut.*, 900 F.2d 882 (6th Cir. 1990).  "A claim is plausible on its face if the

---

[4] A Rule 12(b)(1) motion challenging justiciability does not pertain to issues unique to patent law.  Thus, the Federal Circuit applies the law of the regional circuit in which the district court sits when considering these jurisdictional issues. *Cedars-Sinai Medical Ctr. v. Watkins*, 11 F.3d 1573, 1580 (Fed. Cir. 1993) (citing *Molins PLC v. Quigg*, 837 F.2d 1064, 1066 (Fed. Cir. 1998).

'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

Conclusory allegations or legal conclusions cloaked as factual allegations will not suffice. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). And, a complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient, "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

To determine whether a plaintiff has stated a claim sufficient to withstand a challenge under Rule 12(b)(6), courts may consider the complaint and: "(1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 741 (N.D. Ohio 2010); *Barany-Snyder v Weiner*, 539 F.3d 327, 332 (6th Cir. 2008); Fed. R. Civ. P. 12(b)(6) & 10(c).

## IV.    LAW AND ANALYSIS

### A.   Ajax's Cause of Action for Infringement of the '709 Patent Must be Dismissed

When it filed its Complaint, Ajax was neither the owner nor exclusive licensee of the '709 Patent—*i.e.*, Ajax did not have standing to bring the patent action. *See infra* at Section IV.A.1.a. Nevertheless, Ajax accused AllFasteners' NexGen blind bolt assemblies (hereinafter, the "Accused Instrumentality") of directly and indirectly infringing the method claims of the '709 Patent. (ECF # 1 at ¶¶ 74-75). But, as explained below, a product, as a matter of law, cannot infringe a method claim, nor can the Accused Instrumentality infringe any claim of the

'709 Patent, either literally or under the doctrine of equivalents.  Accordingly, this Court should grant Defendants' Motion to Dismiss with prejudice.  Ajax's lack of standing and the facts as alleged by Ajax, do not, and cannot, sustain a cause of action for patent infringement.

> 1. **Ajax Incurably Lacks Standing to Maintain An Infringement Action**

>> a. *There is No Article III Injury-in-Fact Because Ajax was Not an Owner Or Exclusive Licensee of The '709 Patent at the Time of Filing this Action*

Contrary to its contentions (ECF # 1 at ¶ 17; *see also*, FAC at ¶¶ 2, 5, 22, 87-92), the facts reveal that at the time of filing Ajax held **no** right to exclude others from practicing the method claims of the '709 Patent.  And, despite Ajax's repeated attempts to amend its Complaint (ECF # 35 and ECF # 37), this "jurisdictional defect cannot be cured by the addition of a party" that might have standing.  *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) (citing *Paradise Creations, Inc. v. U V Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003)); *Alps South, LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379 (Fed. Cir. 2015).

"Under 35 U.S.C. § 281, a 'patentee' has standing to pursue a patent infringement action. *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002).  A licensee also will have standing to sue, without joining the patent owner, if prior to the inception of the lawsuit, the licensee acquires 'all substantial rights' in the patent.  *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1276 (Fed. Cir. 2007); *Tyco Healthcare Group LP v. Ethicon Endo-Surgery, Inc.*, 587 F.3d 1375, 1378 (Fed. Cir. 2009).

Ajax admits that it is not the owner of the '709 Patent, but rather concludes without any supporting facts that it is "solely and exclusively authorized by the current owner of the '709 Patent, ACME [Equipment[5] Pty Ltd], to practice and enforce the '709 Patent."  (ECF # 1 at ¶17).

---

[5] Paragraph 17 of the Complaint identifies "ACME Engineered Holdings Pty. Ltd." as the current owner of the '709 Patent, but ACME Equipment Pty Ltd is listed as the current owner.  (*Cf.* ECF # 1 at ¶ 17, *with* ECF # 1 at ¶ 2, *and* Exh. B, Deed of Assignment filed with the PTO Assignment

Ajax tries to support its claim to standing by relying on a one page letter (attached at Exh. C, the "License Letter") produced pursuant to L.P.R. 3.2(d), which requires producing "[a]ll documents evidencing ownership of the patent rights by the party asserting patent infringement."  The License Letter, dated January 31, 2007, indicates that as of that date "[Ajax] has the authority to use, market, enforce and act on behalf of [the purported patent owner, ACME Equipment Pty Ltd] in relation to all **patents** held in the company's name." *Id.* (emphasis added).

The '709 Patent, however, did not issue until May 20, 2008, almost sixteen months later.  At the time the License Letter was executed, only a pending patent application existed that was related to the '709 Patent, not an actual patent.  A 'patent' is different than a 'patent application.'

Even if a reference to 'patents' could include 'pending patent applications,' public documents show that as of the date of the License Letter, the purported licensor, ACME Equipment Pty Ltd, did not hold any rights to the application that later issued as the '709 Patent.



On April 9, 2008, prior to issuance of the '709 Patent, the patentee's attorney identified GEF Holdings Pty Ltd ("GEF") as the owner of the application that later would issue as the '709 Patent.  *See* Exh. D, PTO Fee Transmittal Form (PTOL-85).  According to the Deed of Assignment filed with the PTO by Ajax's counsel on July 6, 2015, *all substantial rights* to the

Database, identifying "ACME Equipment Pty. Ltd." as the current owner of the '709 Patent).

'709 Patent were first assigned from GEF to ACME Equipment Pty Ltd, on November 9, 2012.
*See* Exh. B.  Thus, even if Ajax received a license in 2007 to patents previously held by GEF,
Ajax did not receive a license to the '709 Patent.  The License Letter did not convey any rights to
the '709 Patent in 2007, and does not show that Ajax ever received any rights, much less 'all
substantial rights' to the '709 Patent or the patent application that later issued as the '709 Patent.

For these reasons, Ajax cannot establish that it suffered an injury-in-fact prior to the onset
of the suit, and thus, lacks standing to pursue infringement of the '709 Patent.

> b. *There is No Article III Causation Because, As A Matter Of Law, A Method Claim Cannot Be Infringed By The Manufacture And Sale Of A Product*

Ajax has alleged that AllFasteners' manufacture and sale of NexGen2 bolt assemblies
infringes the method claims of the '709 Patent.  (ECF # 1 at ¶ 73-78).  But this Court does not
have jurisdiction to review that claim because, as a matter of law, there is no cognizable right to
restrict sales of a <u>product</u> based on patent rights to a <u>method</u> claim.

It is the plaintiff's burden to properly plead patent infringement causation for Article III
standing.  *Coyne*, 183 F. 3d at 494; *Paradise Creations*, 315 F.3d at 1308.  To properly plead
patent infringement causation, a purported loss of the right to exclude under a patent must be
"fairly traceable" to allegedly infringing acts of the defendant.  *WiAV Solutions LLC v. Motorola,
Inc.*, 631 F.3d 1257, 1263-1265 (Fed. Cir. 2010).  Thus, in the patent infringement context, the
contours of an Article III causation analysis are informed by the Patent Act[6] (35 U.S.C. §§ 101
*et. seq.*), and if, as a matter of law, the alleged conduct is not violative of the Patent Act, then the
Article III causation is similarly absent.  *See id*.

A method claim is only directly infringed when the method is performed.  *Mendenhall v.
Cedarapids, Inc.*, 5 F.3d 1557, 1579 (Fed. Cir. 1993).  A method claim is not infringed by the

---

[6] *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001)
("Standing in a patent infringement case is derived from the Patent Act . . . .").

sale of a device, even if the device can perform the patented method.  *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774-75 (Fed. Cir. 1993).  Under 35 U.S.C. § 271(a), charges of direct infringement of a method claim must allege that a device or entity performs each step of the claim.  Ajax does not do so, but still ultimately concludes that Defendants' <u>product</u> directly infringes the asserted <u>method</u> claim.  (ECF # 1 at ¶74).  This is a logical impossibility and contrary to law.  Ajax also concludes that manufacturers of sub-components of the Accused Instrumentality also directly infringe the method claims, and as such, Defendants' indirectly infringe the method claims of the '709 Patent.  Again, this is impossible and contrary law.

To plead induced infringement, the patentee must plead an underlying act of direct infringement, and that the indirect infringer knowingly induced infringement and possessed specific intent to encourage another's direct infringement.  *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012).  To survive a motion to dismiss, a plaintiff must plead facts "plausibly showing that [the alleged infringer] specifically intended [a third party] to infringe [the patent-in-suit] and knew that the [third party's] acts constituted infringement."  *In re Bill of Lading Transmission and Processing Sys. Patent Litig*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).

Ajax has not done so.  Paragraph 70 exemplifies the speculative nature of Ajax's claim. The only element of knowledge pled is directed to knowledge that the '709 Patent existed, not knowledge that any portion of the manufacture of the Accused Instrumentality reasonably constituted infringement.  (ECF # 1 at ¶ 71).  Ajax only goes so far as making conclusory averments of willfulness and deliberateness in an attempt to plead knowledge of inducement or specific intent to induce.  (*Id*. at ¶ 76).  These are insufficient.  *See In re Bill of Lading*, 681 F.3d at 1339.  Under Ajax's infringement theory, Ajax needed to plead plausible facts that at least enable an inference that AllFasteners knew that placing orders with manufacturers for sub-

11

components of the Accused Instrumentality would result in direct infringement of the '709

Patent, and that AllFasteners placed those orders with the specific intent of encouraging direct

infringement.  But, Ajax could not and cannot plausibly plead such knowledge or specific intent

because, at a minimum, there can be no direct infringement of a method claim by the Accused

Instrumentality or a single sub-component.  *Mendenhall*, 5 F.3d at 1579.

### 2. Ajax Fails to State a Claim of Infringement of the '709 Patent under Any Reasonable Claim Construction of 'Moveable Member'

The claimed 'moveable member' prevents separation between the tool and the bolt by

making a ***socket-type*** physical engagement that requires movement by the 'moveable member'

relative to both the tool and the bolt to disengage.  Any reasonable construction of 'moveable

member' will not, and cannot, as a matter of law, read on the ***threaded-type*** of engagement found

in the prior art and used on the Accused Instrumentality.

#### a.  *The Law of Patent Infringement*

The patentee bears the burden of pleading and proving infringement.  *Kegel Co. v. AMF*

*Bowling, Inc.*, 127 F.3d 1420, 1425 (Fed. Cir. 1997).  Patent infringement requires that an

accused product have all the same elements, or substantial equivalents thereof, present in the

claim of the patent.  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997).

If even one element is not present, the accused product does not, as a matter of law, literally

infringe.  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581 (Fed. Cir. 1996).

Infringement is determined by a two-step analysis.  *CAE Screenplates, Inc. v. Heinrich*

*Fiedler GmbH & Co., KG,* 224 F.3d 1308 (Fed. Cir. 2000).  "First, the claims must be correctly

construed to determine the scope of the claims.  Second, the claims must be compared to the

accused device."  *Kahn v. Gen. Motors, Corp.*, 135 F.3d 1472, 1476 (Fed. Cir. 1998).  The first

step, claim construction, is a question of law for the Court.  *Insituform Technologies v. Cat*

*Contracting, Inc.*, 161 F.3d 688, 692 (Fed. Cir. 1998).  Generally, the terms of the claim are given their ordinary meaning, unless it appears that the inventor used them differently. *Vitronics*, 90 F.3d at 1582.  Where the claim terms are ordinary, non-technical terms, claim construction consists of no more than application of the common, ordinary meaning of the terms. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*).

In determining the ordinary and customary meaning of claim terms, the court first looks to the claim language.  *Dow Chem Co. v. Sumitomo Chem. Co.*, 341 F.3d 1370, 1372 (Fed. Cir. 2001).  Second, the court turns to the specification, which is the "single best guide to the meaning of a disputed term."  *Phillips*, 415 F.3d at 1315.  Next, if provided, the court will look to the prosecution history.  *Id.*  After construing the claim terms, the court proceeds to the second step-comparing the construed limitations to the accused products.  *Kahn*, 135 F.3d at 1476.  This comparison may be done solely on the pleadings, when, as here, the Accused Instrumentality is before the court.  *Clark v. Walt Disney Co.*, 642 F. Supp. 2d 775, 781 (S.D. Ohio 2009)

> b. *As a Matter of Law, the Accused Instrumentality Cannot Literally Infringe the '709 Patent Because it Practices the Prior Art*

The Court need not expand the record to determine that the Accused Instrumentality does not have a 'moveable member' that moves relative to the bolt and tool, and instead uses a **threaded-type** engagement.  *See Wago Verwaltungsgesellschaft Mbh v. Rockwell Automation*, 2012 U.S. Dist. LEXIS 30703, *13 (N.D. Ohio Mar. 7, 2012).  Upon reading the claims[7], it is clear that the plain and ordinary meaning of 'moveable member' requires <u>a distinct[8] 'member'</u>

---

[7] Claim 1 states that the 'moveable member' "engages [the] bolt engagement portion [of the tool] and [the] tool engagement portion [of the bolt]," and it prevents "separation of [the] bolt engagement portion [of the tool] and [the] tool engagement portion [of the bolt]."

[8] *Becton, Dickinson & Co. v. Tyco Healthcare Croup*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) (citing *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1404-05 (Fed. Cir. 1996) (concluding that where a claim provides for two separate elements, a "second portion" and a "return portion," these two elements "logically cannot be one and the same.")).

that can move relative to the (1) 'tool engagement portion' of the bolt and (2) 'bolt engagement portion' of the tool.[9]  If the patentee intended to deviate from that ordinary meaning, he could have by "including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."  *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).  In this case, the patentee clearly disavowed the ***threaded-type*** engagement taught by the prior art.  (ECF # 1-4, the '709 Patent, 1:34-38).

The '709 Patent taught that the invention covered only ***socket-type*** connections, and not the ***threaded-type*** connections practiced in the prior art and by the Accused Instrumentality.



Comparison of bolt-tool connection type between Fig. 2 from the Prior Art '113 Application, with Fig. 11 from the '709 Patent.

The feature of the Accused Instrumentality for engagement between bolt and tool – a ***threaded-type*** connection – is disclosed in the prior art cited in the '709 Patent, and is not equivalent to the

---

[9] Alternatively, under Section 112(f), this Court may find that 'moveable member' is most appropriately construed as a means-plus-function claim term because 'member' is a nonce word. The term 'member' is described in terms of what it does, *i.e.*, its function, not in terms of what it is – its mechanical structure – thus putting it within the scope of Section 112(f).  *Mas-Hamilton Group v. LaGard, Inc.*, 21 F. Supp. 2d 700 (E.D. Ky. 1997).  This term performs the function of: providing for the prevention of separation (*i.e.*, engagement) between the tool and the bolt.  The corresponding structure identified in the specification is the classic ***socket-type*** 'stud' that moves relative to the bolt and the tool.  '709 Patent at 6:7-14, 7:37-39, 7:43-45, 8:29-33, and 8:57-63. To the extent Ajax contends that there exists a corresponding structure to the term 'moveable member' whose structural equivalents include a ***threaded-type*** engagement, then no such corresponding structure is disclosed and such a construction would render the term 'moveable member' indefinite.  *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311-12 (Fed. Cir. 2012).

*socket-type* connection claimed in the '709 Patent.  (*See* ECF # 1 at Exhs. C, B, D, H, J, K).



Accused Instrumentality's bolt-tool *threaded-type* engagement, the tool has a male threaded end (X) for connection into the female threaded end (Y) of the bolt tail.

Because Ajax attached the '709 Patent (ECF # 1-4) and representations of the Accused Instrumentality (ECF # 1-10, 1-11) to the Complaint, the Court has before it all that it needs to decide this motion as a matter of law.  *Clark*, 642 F. Supp. 2d at 781 (citing *Bradt v. Kelsey-Hayes Wheel Corporation*, 14 F.Supp. 709, 709 (E.D. Mich. 1936) ("The law is well established that where the alleged infringing device or devices are before the court . . . the question of infringement may be determined upon a motion to dismiss.")).

Ajax has not alleged, and cannot allege, that the method of engagement used by the Accused Instrumentality is the *socket-type* engagement of the '709 Patent because it is clear that the Accused Instrumentality uses the *threaded-type* engagement of the prior art.  *Id*. at 710. Thus, as a matter of law, the Accused Instrumentality cannot literally infringe the '709 Patent.

       c.  *As a Matter of Law, the Accused Instrumentality Cannot Infringe Under the Doctrine Of Equivalents Because Equivalents Cannot Encompass the Prior Art*

Ajax's allegations of infringement under the doctrine of equivalents improperly allege that the 'moveable member' functions in the same way[10] as a *threaded-type* engagement taught by the prior art.  In *Wilson Sporting Goods Co. v. David Geoffrey & Associates*, the Federal

---

[10] Such a finding would entirely redefine the term 'moveable' to mean 'non-moveable'—this cannot be permitted.  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).

Circuit held that as a matter of law there can be no infringement under the doctrine of equivalents if the asserted equivalents encompass the prior art. 904 F.2d 677, 683 (Fed. Cir. 1990) (*overruled in part on other grounds* by *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83 (1993)). Judgment in defendant's favor is often mandated if the written description, like in this case, criticizes the feature for which equivalency is sought. *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1309 (Fed. Cir. 2007); *Gaus v. Conair Corp.*, 363 F.3d 1284, 1285 (Fed. Cir. 2004); *Dawn Equip. Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1016 (Fed. Cir. 1998).

The application that led to the '709 Patent ("the '709 Application") makes clear that the claim term 'moveable member' refers to the moveable portion of a classic ***socket-type*** connection. The single feature upon which patentability was argued for, and then was granted,[11] was the replacement of a prior known ***threaded-type*** engagement (between bolt and tool) with the ***socket-type*** 'moveable member' claimed in the '709 Patent. (ECF # 1-4 at 1:34-38). Thus, the Accused Instrumentality cannot infringe any claim of the '709 Patent under the doctrine of equivalents. Ajax's patent infringement claim should be dismissed with prejudice because the Accused Instrumentality cannot infringe the '709 Patent as a matter of law.

---

[11] Considering only the '113 PCT and a simple piece of prior art directed to ***socket-type*** connections (Heber, U.S. Patent No. 6,145,851), the '709 Application issued without a single rejection, but the PTO Examiner's "Statement for Reasons of Allowance" is clear:

> Regarding claim 1, the prior art does not teach or suggest the bolt wherein the bolt engagement portion and the tool engagement portion engage along an interface, and separation of the bolt engagement portion and the tool engagement portion is ***prevented*** by a ***moveable member***, which engages the bolt engagement portion and the tool engagement portion across the interface, in combination with the other claimed limitations.

(Exh. E at p 3) (emphasis added). The PTO Examiner's Statement for Reasons of Allowance virtually mirrors the final 'wherein' clause of claim 1 of the '709 Patent, and is an important source of prosecution file history. *See Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418 (Fed. Cir. 1996). In deciding motions under Fed. R. Civ. P. 12(b), the Court may take judicial notice of matters of public record from sources such as the PTO. *Mettke v. Hewlett Packard Co.*, 2012 U.S. Dist. LEXIS 49164, at *9 n.2 (S.D. Ohio April 6, 2012).

**B.  Ajax Fails to Sufficiently Plead Violations of the Lanham Act**

Count II of the Complaint alleges multiple Lanham Act violations, namely: (1) trade dress infringement under § 1125(a)(1)(A); and (2) misrepresentation of geographic origin and quality under § 1125(a)(1)(B).  (ECF # 1 at ¶¶ 79-85).

Standing to sue under the Lanham Act is only conferred on the class of plaintiffs whom Congress has authorized to sue under the Act.  *Lexmark*, 134 S. Ct. at 1391.  The Act only provides relief to those that plausibly allege facts sufficient to infer "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade."  *Id*.  Thus, for any Lanham Act violation alleged, Ajax must plead that it suffered a specific injury to a well-defined and cognizable legal interest that was a foreseeable[12] result of AllFasteners' alleged misconduct.  Ajax's allegations in Count II, however, fail as a matter of law to establish standing and[13] fail to state a claim under the Lanham Act.  Thus, Count II also should be dismissed with prejudice.

**1.  Trade Dress Infringement**

Ajax fails to plead facts that support an inference that it has protectable trade dress, that any such right has been infringed, or that any harm has come to Ajax as a result of the alleged infringement.  To state a claim under § 1125(a)(1)(A) of the Lanham Act, a plaintiff must allege :

    (1) that its trade dress has obtained secondary meaning in the marketplace;
    (2) that the trade dress of the competing products is confusingly similar; and
    (3) that the appropriated features of the trade dress are primarily nonfunctional.

---

[12] Proximate causation, like any other element of a cause of action, must be adequately alleged at the pleading stage.  *Lexmark*, 134 S. Ct. at 1391 n.6.

[13] Lanham Act standing requirements of injury-in-fact and causation "often overlap" with the corresponding 'substantive' elements of the statute.  *See generally Lexmark*, 134 S. Ct. at 1386-88; *see also National Railroad Passenger Corp. v. National Assn. of Railroad Passengers*, 414 U.S. 453, 456 (1974) ("the merits inquiry and the statutory standing inquiry often 'overlap'.").  "[I]n ruling on standing, it is both appropriate and necessary to look to" the Act's corresponding elements of injury to a commercial entity's protectable interest caused by consumer confusion or reliance on misrepresentations made by the defendant.  *Flast*, 392 U.S. at 102 (1968).

*Gray v. Meijer, Inc.*, 295 F.3d 641 (6th Cir. 2002).  Such a claim must include a specific

identification of the protectable features of the asserted trade dress.  *General Motors Corp. v.*

*Lanard Toys, Inc.*, 468 F.3d 405, 416 (6th Cir. 2006) (holding that plaintiffs must detail "exactly

what the[ir] trade dress consists of").  Here, Ajax has failed to meet these requirements.

### a.  *Ajax Lacks Standing to Assert Trade Dress Infringement*

Ajax generically alleged that AllFasteners' copied Ajax's trade dress.  (ECF # 1 at ¶ 81-

83; *see also*, FAC at ¶ 98).  This Court, however, does not have jurisdiction over that claim at

least because, as a matter of law, no cognizable right exists in protecting functional features, and

because Ajax failed to plead an injury proximately caused by AllFasteners' alleged copying.

As a matter of law, Ajax cannot make out a proper claim under § 1125(a)(1)(A) because

Count II is devoid of any allegations that the features of the purported trade dress (in either its

website, YouTube video, or the blind bolt assembly) are non-functional.  A blind bolt assembly

itself is functional, and an 'installation' video is functional by definition.  Ajax has not identified

a single non-functional aspect of its YouTube video, webpage, or ONESIDE fastener that could

constitute protectable trade dress, (*see, e.g.*, ECF # 1 at ¶¶ 47, 48), even though non-functionality

is an indispensable element of a trade dress claim.  *Groeneveld Transp. Efficiency, Inc. v.*

*Lubecore Int'l, Inc.*, 730 F.3d 494, 508 (6th Cir. 2013).

Even if Ajax could make out a proper claim of wrongful conduct under § 1125(a)(1)(A),

Ajax failed to sufficiently plead injury.  Article III injury under § 1125(a)(1)(A) must include

allegations that the defendant's purported copying is likely to cause, or has already caused,

confusion with a substantial portion of the plaintiff's potential consumers, such that they would

not engage in trade with the plaintiff.  *See Lexmark*, 134 S. Ct. at 1391.  Yet, Ajax's pleadings do

not include even a conclusory allegation of causation that *any* injury *directly flowed* from the

purported false associations.  *Id.* (holding that Lanham Act claims require pleading facts

sufficient to infer "injury flowing directly from the deception wrought").  Ajax only alleges

general harm as a result of the alleged copying of Ajax's trade dress.  (ECF # 1 at ¶ 81-83; *see*

*also*, FAC at ¶ 86, 98).  Ajax's failure to allege injury and causation belie an incurable error.

To survive a motion to dismiss on its trade dress claim, Ajax also must allege that an

ordinary consumer of blind bolts would likely be confused into thinking that each parties' blind

bolts were associated with the same company.  *See Abercrombie & Fitch Stores, Inc. v. Am.*

*Eagle Outfitters, Inc.*, 280 F.3d 619, 645 (6th Cir. 2002); *Daddy's Junky Music Stores, Inc. v.*

*Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997).  The appropriate benchmark

for assessing the likelihood of confusion is the ordinary consumer who would consider buying

the product at issue.  *Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1266 (6th Cir.

1985).  Ajax merely concludes that AllFasteners' webpage, YouTube video, and blind bolts are

"substantially" or "nearly identical" to Ajax's.  (ECF # 1 at ¶47, 48, 67).  Yet, mere conclusions

of similarity does not sufficiently plead that ordinary consumers are likely to be confused as to

source.  *Frisch's*, 759 F.2d  at 1266.  Ajax's pleading failure is again fatal to its ability to assert a

claim for trade dress infringement.

### b.  *Ajax Fails to State a Claim of Trade Dress Infringement*

Ajax failed to identify specific features of its website, YouTube video, and ONESIDE

fastener that are protectable as trade dress, that any purported trade dress features were

distinctive, or that the relevant consuming public was likely to be confused therefrom.

Ajax's broadly alleges trade dress in the visual appearance of its website, a YouTube

installation video, and its ONESIDE fastener.  (ECF # 1 at ¶¶ 36, 50, 65, 67-70, 72, and 83).

Ajax summarily asserts that its website design is distinctive, but fails to allege that any of the

site's specific features are inherently distinctive or have acquired secondary meaning.  (ECF # 1

at ¶ 36); *General Motors*, 468 F.3d at 416; *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303,

310 (3rd Cir. 2014).  Ajax also has not properly alleged what specific elements of the YouTube

video or ONESIDE fastener comprise protectable trade dress, or that the purported trade dress in

its YouTube video and ONESIDE fastener is inherently distinctive or has acquired secondary

meaning.  (*Id*.).  In the absence of factual allegations of distinctiveness, *i.e.*, that the plaintiff's

potential consumers <u>recognize</u> the features of the purported trade dress and <u>identify</u> them with

Ajax, Ajax's claim should be dismissed.  *Am. Roll Form Corp. v. Chamberlain Group, Inc.*,

2015 U.S. Dist. LEXIS 26560, *10-11 (N.D. Ohio Mar. 2, 2015);[14] *Twombly*, 550 U.S. at 555.

### 2.  False Advertising by Misrepresentation of Geographic Origin and Quality

Rather than establish standing by pleading injuries proximately caused by AllFasteners'

alleged misrepresentations, *Flast v. Cohen*, 392 U.S. 83, 102 (1968), Ajax attempts to use the

text of the Fastener Quality Act ("FQA") and purview of the Federal Trade Commission ("FTC")

to construct an appearance of literal falsity or actual consumer deception.  Neither Ajax's smoke,

nor its mirrors, should permit it to pursue these claims and usurp the FTC's authority to interpret

its own standards.  A claim under § 1125(a)(1)(B) of the Lanham Act requires alleging that:

> (1) a defendant has made ***false or misleading statements*** of fact concerning his own
> product or another's; (2) the statement actually or tends to ***deceive*** a substantial portion
> of the intended audience; (3) the statement is material in that it will likely ***influence*** the
> deceived consumer's purchasing decisions; (4) the advertisements were introduced into
> interstate commerce; and (5) there is some ***causal link*** between the ***challenged***
> ***statements*** and ***harm*** to the plaintiff.

*Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric*

*Surgery*, 185 F.3d 606, 613 (6th Cir. 1999) (emphasis added).  Ajax fails to do so.

---

[14] Like the defendant in *Am. Roll Form Corp.*, AllFasteners decided to no longer source a
particular part from the plaintiff, and the plaintiff responded by filing suit, requesting relief under
the Lanham Act.  *Id*. at *2-6.  The *Am. Roll Form Corp.* court dismissed the plaintiff's charges of
Lanham Act violations because the plaintiff had failed to allege that its purported trade dress had
acquired a secondary meaning that identified the plaintiff as its manufacturer, and there were not
any allegations that the public was likely confused as to the origin of the defendant's advertising.
*Id*. at *11.  Thus, like in *Am. Roll Form Corp.*, Ajax failed to raise a right to relief above the
speculative level and its trade dress infringement claim should be dismissed.

*a. Ajax Lacks Standing to Assert a Claim under 15 U.S.C. § 1125(a)(1)(B)*

Ajax lacks standing under *15 U.S.C. § 1125(a)(1)(B)* because it has not, and cannot as a matter of law, plausibly allege that AllFasteners' statements are 'provably false' or that any consumer deception occurred. Ajax's claims should be dismissed because mere allegations of general competitive injury do not suffice to show that Ajax has a redress-able right. Ajax also has failed to plead any injury that was proximately caused by AllFasteners' alleged copying.

To state a cause of action for false advertising under the Lanham Act, "a plaintiff **must** plead . . . an injury to a commercial interest in sales or business reputation **proximately caused** by the defendant's [alleged] misrepresentations." *Lexmark*, 134 S. Ct. at 1395 (emphasis added). Ajax has failed to allege any proximately caused injury.

A *false statement* that is the basis of a Lanham Act claim can be either: (1) literally false, and presumed to deceive consumers; or (2) literally true, but misleading and likely to deceive consumers. *See, e.g.*, *Am. Council*, 185 F.3d 606 at 613-614. Only an *unambiguous* statement can be literally false. *Id*. A determination of ambiguity is a question of law. *Id*. at 615 n.2. A claim of literal falsity is not *unambiguous*, and fails, when a statement can be understood as conveying different messages. *Schering-Plough Healthcare Prods. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 512 (7th Cir. 2009). Thus, to sufficiently allege a causal link, a plaintiff must plead that a statement is either: (1) *unambiguously* false; or (2) misleading, and the statement actually or tends to *deceive* a substantial portion of the intended audience. Ajax falls short.

Ajax alleges a misrepresentation of geographic origin and quality by *challenging* the validity of two *statements* made by AllFasteners: (1) NexGen blind bolt assemblies are "Made in the USA" (ECF # 1 at ¶ 63); and (2) the "AF" and "A490M" raised markings on the head of NexGen blind bolts. (ECF # 1 at



21

¶¶ 51, 59; ECF # 1-10). Ajax attempts to shortcut pleading the essential element of *deception* by merely concluding that the NexGen blind bolt assemblies are "subject to" and non-compliant with: (1) "the requirements of the [FTC] governing the use of the language 'Made in the USA'" (ECF # 1 at ¶¶ 62-63); and (2) "the legal and regulatory requirements of [the FQA]" as they apply to ASTM 'consensus' standards for quality and marking (ECF # 1 at ¶¶ 51, 56, 57, 61). But, since the Complaint is devoid of allegations of consumer *deception* resulting from the *challenged statements*, Ajax's claim survives only if it is reasonable to infer that the *challenged statements* are *unambiguously* false in light of the FTC and FQA guidelines. They are not. To support[15] an inference that those *challenged statements* are *unambiguously* false, compliance with the guidelines must, as a matter of law, not be open to multiple interpretations—but it is.[16]

Even if Ajax could plead a claim of wrongful conduct under § 1125(a)(1)(B), Ajax fails to sufficiently plead injury. Ajax broadly alleges economic and reputational injury (ECF #1 at ¶¶ 83, 85), but fails to explain why such injury directly flows from the alleged falsity. *Lexmark*, 134 S. Ct. at 1391. Ajax fails to assert any economic injury to sales of its "Made in Australia" ONESIDE product (ECF # 1 at ¶ 18), or that any injury was proximately caused by alleged misrepresentations of "Made in the U.S.A." (ECF # 1 at ¶¶ 51-63, 81-82; *contra* FAC at ¶ 72). Ajax has not alleged, and cannot allege, that a sale to AllFasteners equates to a lost sale to Ajax.

Proximate cause[17] analysis evaluates "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Lexmark*, 134 S. Ct. at 1390. Congress did not

---

[15] Merely alleging violation of FTC guidelines will not suffice. *Millennium Imp. Co. v. Sidney Frank Importing Co.*, 2004 U.S. Dist. LEXIS 11871, at *18 (D. Minn. June 11, 2004).

[16] The FQA explicitly provides for subjective application as to quality and marking based on individual 'consensus standards' and individual job 'specifications'. *See* 15 U.S.C. § 5403(c).

[17] Even if Ajax had pled the legal conclusion that a causal nexus existed between a misrepresentation and an injury, which it has not, Ajax should not be permitted to continue its fishing expedition in search of support for alleged misrepresentations. *See Pers. Computer Sys.*

intend to grant the causes of action created by § 1125(a)(1)(B) to a plaintiff who cannot causally link a specific harm to plausibly alleged wrongful conduct. *See id.* at 1391; *see also Allen*, 468 U.S. at 751. Under strikingly similar facts, the District of Connecticut disposed of a similar Lanham Act claim as a matter of law on a motion for summary judgment. *New Colt Holding Corp. v. RJG Holdings of Fla., Inc.*, 312 F. Supp. 2d 195, 234-35 (D. Conn. 2004).

In *New Colt*, the counterclaim plaintiffs (*i.e.*, defendants) alleged a misrepresentation of origin by assertions of "Made in the U.S.A." by counterclaim defendants (*i.e.*, plaintiffs). *Id.* at 234. The court found that counterclaim plaintiffs lacked standing because there was no basis to infer the essential elements of 'likely injury' or a 'causal nexus,' when, as here, there was no allegation that sales of a non-U.S. made product would suffer from a competitors' marketing of a product as "Made in the U.S.A." *Id.* The court stated succinctly

> Assuming [counterclaim defendants'] [products] are not of domestic origin, there is no evidence to suggest that if consumers knew the truth of its origin they would cease to care about the [products] domestic origin and purchase [counterclaim plaintiffs'] foreign produced [products]. It is therefore unclear how [counterclaim plaintiffs] are damaged. [Counterclaim defendants] may reap some undue benefit, but at best this injures other manufacturers whose products are manufactured in the U.S. and not [counterclaim plaintiffs].

*Id.* (emphasis added); *see Prakash v. Altadis U.S.A., Inc.*, 2012 U.S. Dist. LEXIS 46337, *27-29 (N.D. Ohio Mar. 30, 2012) (false advertising claims dismissed when there was no standing for misrepresentation of geographic origin claim because there was no allegation that sales of a non-Dutch/Cuban made cigar would suffer from a competitor marketing cigars as Dutch and Cuban).

Ajax's failure to plausibly allege that AllFasteners made any statements that are *unambiguously* false, or that are likely to *deceive* consumers, cannot support its generically

---

*v. Cent. Knox, Inc.*, 2012 U.S. Dist. LEXIS 46035, *19 (E.D. Tenn. Mar. 30, 2012) (granting a motion to dismiss a Lanham Act claim for plaintiff's failure to sufficiently plead a causal link, wherein plaintiff pled "the legal conclusion that there is some causal link between the [defendant's alleged misrepresentations of fact] and [defendant] being awarded the bids [that otherwise would have gone to plaintiff].").

asserted harm.  Thus, at a minimum, Ajax failed to sufficiently plead proximate cause and its cause of action should be dismissed for lack of standing.

> ### b.  Ajax Fails to Sufficiently Allege a Misrepresentation of Geographic Origin under the FTC's 'Made in the USA' Standard

Merely concluding that the NexGen blind bolt assemblies "do not qualify under the FTC regulations" (ECF # 1 at ¶ 63) is not sufficient to allege[18] misrepresentation of geographic origin. The FTC has authority under Section 5 of the FTC Act, 15 U.S.C. § 45, to regulate claims of U.S. origin in advertising.  *See* 62 Fed. Reg. 63756 (Dec. 2, 1997).  The FTC permits unqualified statements of U.S. origin only when "all or virtually all" of the ingredients are domestic; that is, the product must contain no more than a *de minimis* amount of foreign content.  *Id*. at *63756. To satisfy the standard for unqualified statements, FTC policy requires that the final assembly of the product take place in the United States.  *Id*. at *63768.  But the FTC also considers other factors, including "the portion of the product's total manufacturing costs that are attributable to U.S. parts and processing."  *Id*. at *63768-69.  "[T]here is no single 'bright line' to establish when a product is or is not 'all or virtually all' made in the United States."  *Id*.

Ajax pleads that AllFasteners do not have the ability to "manufacture blind structural fasteners" (ECF # 1 at ¶¶ 54, 55, 69), and therefore AllFasteners is not the "actual manufacturer" of the NexGen2 blind bolt assemblies (ECF # 1 at ¶ 56).  Ajax does not and cannot go further to provide any plausible factual support for its false advertising claims.  Instead, Ajax concludes

---

[18] The absence of well pled, factual allegations to support Ajax's false advertising claims makes them more akin to a 'lack of substantiation' claim under the Federal Trade Commission Act ("FTCA").  But, no private right of action exists under the FTCA against a manufacturer for 'lack of substantiation'.  *Dreisbach v. Murphy*, 658 F.2d 720, 730 (9th Cir. 1981).  The law does not permit a private plaintiff to simply allege that a product lacks adequate substantiation and shift the burden to a manufacturer to produce substantiation for the product.  *See Fraker v. Bayer Corp.*, 2009 U.S. Dist. LEXIS 125633, at *19-21 (E.D. Cal. Oct. 2, 2009).  Here, Ajax's allegations that "[e]valuation and testing" of AllFasteners' NexGen2 products demonstrate that they are "not in conformance with the industry standards" (ECF # 1 at ¶ 61) does not properly plead a false advertising type claim that would require AllFasteners' to disprove Ajax's claim.

that because the NexGen2 blind bolt assemblies are "supplied from unknown and possibly foreign sources" (ECF # 1 at ¶ 50), they must not "qualify under the FTC regulations to be designated 'Made in the USA'" (ECF # 1 at ¶ 62).

Ajax's factual allegations here consist of nothing more than unsupportable speculation. Whether AllFasteners is in compliance with FTC guidelines interpretations, and whether consumers are deceived as a result, is not "provably false." *A.P. Deauville, LLC v. Arion Perfume & Beauty, Inc.*, 2014 U.S. Dist. LEXIS 173073, at *10-14 (N.D. Cal. Dec. 12, 2014); *Honeywell Int'l Inc. v. ICM Controls Corp.*, 45 F. Supp. 3d 969, 988 (D. Minn. 2014). Accordingly, Ajax's cause of action should be dismissed with prejudice.

### c. Ajax Fails to Sufficiently Allege a Misrepresentation of Quality under the Fastener Quality Act

The FQA is <u>subjectively</u> applied to quality and marking based on individual 'consensus standards' and job 'specifications.' *See* 15 U.S.C. § 5403(c). Sub-section 5403(b) of the FQA plainly provides that references to consensus standards like A490M do not communicate to consumers that a fastener so marked necessarily meets all the requirements of the standard:

> A direct or indirect reference to a *consensus standard* to represent that a fastener conforms to particular requirements of the *consensus standard* <u>shall not</u> be construed as a representation that the fastener <u>meets all</u> the requirements of the *consensus standard*.

*See* 15 U.S.C. § 5403(b) (emphasis added). Similarly, the marking requirements of 15 U.S.C. § 5407 only apply if an individual job 'specification' is silent on the issue. In fact, each of the A490M standards referenced (and the standards referenced therein, *e.g.*, F1470) align with the flexibility provided for by the FQA between distributors and consumers. (*See* ECF # 1 at ¶ 51).

Ajax pleads in conclusory fashion that AllFasteners "product certifications fail to conform to the requirements followed by the plaintiff" (ECF # 1 at ¶ 56), and that undisclosed test results show the NexGen2 blind bolt assemblies "are not in conformance with the industry

standards (ECF # 1 at ¶ 61).  Ajax goes no further to provide any plausible factual support for its

claims.  Instead, Ajax immediately arrives at the conclusion that the NexGen2 blind bolt

assemblies must be of "inferior quality."  (ECF # 1 at ¶62).  Hence, whether AllFasteners is in

compliance with FQA interpretations, and whether consumers are deceived as a result, is not

"provably false."  *A.P. Deauville*, 2014 U.S. Dist. LEXIS 173073, at *10-14; *Honeywell Int'l

Inc.*, 45 F. Supp. 3d at 988.  Accordingly, this claim, too, should be dismissed with prejudice.

### C.  Ajax Fails to Sufficiently Plead Misappropriation of Any Trade Secrets

When it filed the Complaint, Ajax lacked standing to assert Count III and did not state a

claim for misappropriation.  That failure is incurable and fatal.  Contrary to Ajax's conclusory

allegations (ECF # 1 at ¶¶ 41, 49, 65, 89), the facts reveal that Ajax is not the type of plaintiff

that Ohio's Uniform Trade Secrets Act[19] ("OUTSA") was meant to protect.  Instead of asserting

a cognizable right in trade secrets, Ajax chose not to disclose what specific information

AllFasteners purportedly misappropriated.  Ajax's failure to identify any redress-able right in

trade secrets at the time of filling is fatal and not cured by Ajax's repeated attempts to amend its

Complaint.  *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993).

### 1.  Ajax Lacks Standing to Assert Trade Secret Misappropriation

Ajax generally alleged harm from a purported misappropriation of trade secrets, but

failed to identify with the requisite specificity what information AllFasteners' purportedly

misappropriated (ECF # 1 at ¶ 86-89).  Ajax also admits that it expressly authorized the public

disclosure of the information it alleges was misappropriated (ECF # 1 at ¶ 64).

---

[19] Under the OUTSA, a trade secret is information that (1) "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and (2) "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

The claim of trade secret misappropriation does not pass muster under Article III's standing requirement at least because the Complaint does not include sufficient allegations of injury-in-fact, and the allegations of injury are facially inconsistent with the rest of the pleadings. Ajax's conclusory allegation that AllFasteners misappropriated its trade secrets does not suffice. *See, e.g.*, *Jaro Transp. Servs. v. Grandy*, 2006 U.S. Dist. LEXIS 62932, at *34-42 (N.D. Ohio Sept. 5, 2006). The vaguely defined injury asserted by Ajax is the type of abstract injury that would transform the federal courts into nothing more than a vehicle for the vindication of value interests of concerned bystanders, and, is not "an injury sufficient to confer standing under Art. III." *Valley Forge*, 454 U.S. at 485.

Even if Ajax did properly identify its purported trade secrets, its allegation of misappropriation is trumped by Ajax's admission that it <u>expressly authorized</u> AllFasteners to disclose "material specifications, manufacturing technology and know-how" to the public for the purpose of "effectively market[ing] the ONESIDE." (ECF # 1 at ¶ 64). Thus, this Court does not have jurisdiction to review Count III because, as a matter of law, there can be no cognizable right of trade secret in information that is not kept secret.

### 2. Ajax Fails to Sufficiently Allege Trade Secret Misappropriation

To state a claim of trade secret misappropriation, a plaintiff must identify with specificity the information that it alleges is confidential and that was misappropriated, as well as that it used reasonable efforts to maintain secrecy of the information. *Rainworks Ltd. v. Mill-Rose Co.*, 622 F. Supp. 2d 650, 657-58 (N.D. Ohio 2009). Ajax has done neither.

Here, Ajax fails to identify any specific information constituting a trade secret. Nor has Ajax asserted that it has taken measures to maintain the confidentiality of any such information. Indeed, it cannot. Ajax failed to identify with specificity any information or materials that would be considered a trade secret. Ajax also cannot proceed because it did not allege that it took

27

reasonable efforts to maintain the secrecy of any of its purportedly confidential information, and it did not sufficiently allege "the underlying issue of the trade secrets' existence."  *Mar Oil Co. v. Korpan*, 2011 U.S. Dist. LEXIS 121706, *12 (N.D. Ohio Oct. 20, 2011).  Accordingly, this cause of action also should be dismissed with prejudice.

### D.  Ajax Fails to Sufficiently Plead that Defendants Breached the Agreement

#### 1.  Ajax Lacks Standing to Assert Breach of Contract

Count IV must be dismissed at least because Ajax lacked standing to enforce the Confidentiality Agreement at the time of filing this action, and because Defendants are not a party to the Confidentiality Agreement.  Despite Ajax's repeated attempts to amend[20] its Complaint, its lack of standing at the time of filing is incurable.  *Keene Corp.*, 508 U.S. at 207.

As a threshold issue, an action for breach of contract can only be maintained by the parties to the contract.  *American Rock Mechanics, Inc. v. Thermex Energy Corp.*, 80 Ohio App.3d 53, 58, 608 N.E.2d 830 (1992) (citing *United States Fidelity & Guaranty Co. v. Truck & Concrete Equipment Co.*, 21 Ohio St.2d 244, 250, 257 N.E.2d 380 (Ohio 1970)).  The plaintiff cannot survive a motion to dismiss if the contract attached to the Complaint plainly contradicts its pleadings regarding the parties to the contract.  *Creelgroup, Inc. v. NGS American, Inc.*, 518 Fed. Appx. 343, 347 (6th Cir. 2013) (quoting *Williams v. CitiMortgage, Inc.*, 498 Fed. Appx. 532 (6th Cir. 2012)) ("[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.").

---

[20] Ajax added unsupportable allegations of agency to its amended complaints (FAC at ¶¶ 44-45), but fails to create a controversy where none previously existed since neither Ajax, nor AllFasteners, were a party to the agreement.  Ajax's implausible and untimely agency theory cannot save Counts III or IV.  *Cleveland Thermal Steam Distrib., LLC v. Carlyle Leader, LLC*, 2015 U.S. Dist. LEXIS 58265 (N.D. Ohio May 4, 2015) (citing *Midkiff v. Adams Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005)).

In *DiPaolo v. Princeton Search, LLC*, 2014 U.S. Dist. LEXIS 15580 (N.D. Ohio Feb. 6, 2014), Judge Gaughan was faced with a similar claim for breach of a confidentiality agreement. In *DiPaolo*, the (counter-claim) plaintiff in that case, Princeton Search, LLC, was a related, but distinct corporate entity from the actual party to the agreement, Princeton Search – Cleveland LLC.  *Id*. at *6.  Judge Gaughan granted (counter-claim) defendant's motion to dismiss because it was clear from the agreement itself that the (counter-claim) plaintiff did not have redress-able rights in the asserted contract.  *Id*. at *7.

In this case, Ajax identifies itself as ACME Operations Pty Ltd. (ECF # 1 at ¶ 1), and alleged that it entered into the Confidentiality Agreement with Defendants.  (*Id*. at ¶ 38).  Ajax identified Defendants collectively as "AF USA, AF Enterprises, and AF LA."  (*Id*. at ¶¶ 5-8). However, the Confidentiality Agreement clearly indicates that the agreement was between (Specifix) Ajax Fasteners Pty Ltd and AllFasteners Pty Ltd, stating:

> This Agreement is made this 5TH day of MARCH, 2013 between AJAX FASTENERS and AllFASTERS . of 15TH LAMBECK DVE— . . . TULLAMARINE, Vic. (herein after known as AllFUSE).
>
> . . .
>
> Signed for and on behalf of:                    Signed for and on behalf of:
>
> SPECIFIX Ajax Fasteners Pty Ltd                 AllFASTNERS Pty Ltd

(ECF # 1-8 at pp. 1-2).

This cause of action should be dismissed because the Confidentiality Agreement attached to the Complaint plainly and materially contradicts Ajax's pleadings regarding the parties to the contract.  Thus, Ajax's claim for breach of contract fails to state a claim for relief because Ajax has not pled sufficient facts to show that it was entitled to enforce the Agreement against Defendants.  *See Beard v. New York Live Ins. & Annuity Corp.*, No. 12AP-977, 2013 Ohio 3700 (10th Ohio App.); *see also Creelgroup*, 518 Fed. Appx at 346.

29

### 2.  Ajax Fails to Sufficiently Allege Breach of Contract

Independent of Ajax's lack of standing to assert its breach of contract claim, Count IV fails to state a claim because it relies on the same vaguely alleged violations pled in Count III in an effort to allege breach of contract.  (ECF # 1 at ¶¶ 90-94).  And like Count III, Ajax fails to identify any specific information improperly shared that resulted in a breach.

To sufficiently plead a breach of contract claim, a plaintiff must allege the existence and terms of a contract, the plaintiff's performance of the contract, the defendant's breach of the contract, and damage or loss to the plaintiff.  *Jarupan v. Hanna*, 173 Ohio App. 3d 284, 2007 Ohio 5081, 878 N.E.2d 66, 73 (Ohio Ct. App. 2007).

Ajax alleged that AllFasteners:

> "induced Ajax to produce substantial additional amounts of highly confidential and trade secret engineering, material specifications, manufacturing technology and know-how, testing and certification processes and procedures, end-user application information and similar confidential information which Ajax would not otherwise have disclosed."

(ECF # 1 at ¶ 65).  Ajax, however, fails to provide any greater detail as to what specific documents it alleges were transferred under the agreement, or any details regarding AllFasteners alleged improper use, beyond the conclusory allegation that such information was used to manufacture the NexGen product.  (*Id.*).  Ajax's complete failure to identify what information was improperly shared or any facts to support its broad allegation of breach should not permit it to continue to pursue Count IV, and it, too, should be dismissed with prejudice.

## V.  CONCLUSION

For at least the foregoing reasons, AllFasteners respectfully request that this Court grant Defendants' Motion to Dismiss, and dismiss all of Ajax's causes of action with prejudice.

Dated:   November 9, 2015                  Respectfully submitted,

                                           */s/ Arthur P. Licygiewicz*
                                           Arthur P. Licygiewicz          (0068458)
                                           John R. Mitchell               (0066759)
                                           Christopher M. Comiskey        (0090297)
                                           THOMPSON HINE LLP
                                           3900 Key Center
                                           127 Public Square
                                           Cleveland, OH  44114-1291
                                           (216) 566-5500
                                           (216) 566-5800 (fax)
                                           Art.Licygiewicz@ThompsonHine.com
                                           John.Mitchell@ThompsonHine.com
                                           Christopher.Comiskey@ThompsonHine.com

                                           ***Attorneys for Defendants***
                                           ***AllFasteners USA LLC,***
                                           ***AllFasteners Enterprises LLC, and***
                                           ***AllFasteners LA LLC.***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 9th day of November 2015 the foregoing *Memorandum in Support of Defendants' Motion To Dismiss For Lack Of Standing And Failure To State A Claim* was filed electronically with the Clerk of the Court using CM/ECF and that the foregoing was served upon the following via electronic mail:

     Robert W. McIntyre (0006768)
     Angela M. Lavin (0069604)
     Peter A. Holdsworth (0075211)
     Wegman Hessler & Vanderburg
     6055 Rockside Woods Blvd, Suite 200
     Independence, OH 44131
     rwmcintyre@wegmanlaw.com
     amlavin@wegmanlaw.com
     paholdsworth@wegmanlaw.com


By:    <u>*/s/ Christopher Comiskey*     </u>
           Christopher Comiskey
           ***Attorney for Defendants***