**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| SPECIFIX FASTENERS PTY LTD, *et al.*, | ) | CASE NO.: 1:15-cv-01366-CAB |
| | ) | |
| Plaintiffs, | ) | Judge Christopher A. Boyko |
| | ) | |
| v. | ) | |
| | ) | |
| ALLFASTENERS USA LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

**Page**

I. LAW AND ANALYSIS ..... 2

A. **Ajax's Cause of Action for Infringement of the '709 Patent Must be Dismissed** ..... 2

1. **Ajax Incurably Lacks Standing to Maintain An Infringement Action** ..... 2

a. *There is No Article III Injury-in-Fact Because Ajax was Not an Owner Or Exclusive Licensee of The '709 Patent at the Time of Filing this Action* ..... 2

b. *There is No Article III Causation Because, As A Matter Of Law, A Method Claim Cannot Be Infringed By The Manufacture And Sale Of A Product* ..... 6

2. **Ajax Fails to State a Claim of Infringement of the '709 Patent under Any Reasonable Claim Construction of 'Moveable Member'** ..... 8

a. *As a Matter of Law, the Accused Instrumentality Cannot Literally Infringe the '709 Patent Because it Practices the Prior Art* ..... 8

b. *As a Matter of Law, the Accused Instrumentality Cannot Infringe Under the Doctrine Of Equivalents Because Equivalents Cannot Encompass the Prior Art* ..... 9

B. **Ajax Fails to Sufficiently Plead Violations of the Lanham Act** ..... 10

1. **Dismissal of Ajax's Trade Dress Infringement Claim is Proper** ..... 11

2. **Dismissal of Ajax's False Advertising Claims is Proper** ..... 12

C. **Ajax Fails to Sufficiently Plead Misappropriation of Any Trade Secrets** ..... 13

D. **Ajax Fails to Sufficiently Plead that Defendants Breached the Agreement** ..... 14

II. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.P. Deauville, LLC v. Arion Perfume & Beauty, Inc.*,
2014 U.S. Dist. LEXIS 173073 (N.D. Cal. Dec. 12, 2014) ........ 13

*Alps South, LLC v. Ohio Willow Wood Co.*,
787 F.3d 1379 (Fed. Cir. 2015) ........ 3

*Am. Coe. Ass'n v. City of Louisa Water & Sewer Comm'n.*,
2009 U.S. Dist. LEXIS 131652 (E.D. Ky. Feb. 27, 2009) ........ 1

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 12

*Baxter v Strickland*,
381 F. Supp. 487 (N.D. Ga. 1974) ........ 5

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
342 F.3d 634 (6th Cir. 2003) ........ 6

*Brown v. VHS of Michigan, Inc.*,
545 F. App'x 368 (6th Cir. 2013) ........ 1

*Cleveland Thermal Steam Distrib., LLC v. Carlyle Leader, LLC*,
2015 U.S. Dist. LEXIS 58265 (N.D. Ohio May 4, 2015) ........ 14

*Conoco, Inc. v. Energy & Envt'l Int'l, LC*,
460 F.3d 1349 (Fed. Cir. 2006) ........ 8

*Coyne v. American Tobacco Company*,
183 F. 3d 488 (6th Cir. 1999) ........ 2

*Dayco Prods., LLC v. Dorman Prods.*,
2010 U.S. Dist. LEXIS 102785 (E.D. Mich. Sept. 28, 2010) ........ 11, 12

*Fair Wind Sailing, Inc. v. Dempster*,
764 F.3d 303 (3rd Cir. 2014) ........ 11

*General Motors Corp. v. Lanard Toys, Inc.*,
468 F.3d 405 (6th Cir. 2006) ........ 11

*GSS Props., Inc. v. Kendale Shopping Center, Inc.*,
119 F.R.D. 379 (M.D.N.C. Mar. 15, 1988) ........ 6

*Honeywell Int'l Inc. v. ICM Controls Corp.*,
45 F. Supp. 3d 969, 988 (D. Minn. 2014) ....................13

*Jaro Transp. Servs. v. Grandy*,
2006 U.S. Dist. LEXIS 62932 (N.D. Ohio Sept. 5, 2006) ....................13

*Joy Techs., Inc. v. Flakt, Inc.*,
6 F.3d 770 (Fed. Cir. 1993) ....................6

*Keene Corp. v. United States*,
508 U.S. 200 (1993) ....................2

*Kobaivanova v. Hansen*,
2011 U.S. Dist. LEXIS 105252 (N.D. Ohio Sept. 16, 2011) ....................6

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ....................2

*Mar Oil Co. v. Korpan*,
2011 U.S. Dist. LEXIS 121706 (N.D. Ohio Oct. 20, 2011) ....................13

*Mas-Hamilton Group v. LaGard, Inc.*,
21 F. Supp. 2d 700 (E.D. Ky. 1997) ....................9

*McPherson v. Kelsey*,
125 F.3d 989 (6th Cir. 1997) ....................1

*Mendenhall v. Cedarapids, Inc.*,
5 F.3d 1557 (Fed. Cir. 1993) ....................6, 8

*Midkiff v. Adams Reg'l Water Dist.*,
409 F.3d 758 (6th Cir. 2005) ....................15

*Mike Vaughn Custom Sports, Inc. v. Piku*,
15 F. Supp. 3d 735 (E.D. Mich 2014) ....................11, 12

*Moseley v. V Secret Catalogue, Inc.*,
537 U.S. 418 (2003) ....................10

*New Colt Holding Corp. v. RJG Holdings of Fla., Inc.*,
312 F. Supp. 2d 195 (D. Conn. 2004) ....................13

*Noah Sys., Inc. v. Intuit Inc.*,
675 F.3d 1302 (Fed. Cir. 2012) ....................9

*Paradise Creations, Inc. v. U V Sales, Inc.*,
315 F.3d 1304 (Fed. Cir. 2003) ....................5

*Prakash v. Altadis U.S.A., Inc.*,
2012 U.S. Dist. LEXIS 46337 (N.D. Ohio Mar. 30, 2012) ....................................................13

*Rainworks Ltd. v. Mill-Rose Co.*,
622 F. Supp. 2d 650 (N.D. Ohio 2009)....................................................................................13

*Ricoh Co. Ltd v. Quanta Storage Inc.*,
550 F.3d 1325 (Fed. Cir. 2008)..................................................................................................7

*RMI Titanium Co. v. Westinghouse Elec. Corp.*,
78 F.3d 1125 (6th Cir. 1996) .....................................................................................................2

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
402 F.3d 1198 (Fed. Cir. 2005)..................................................................................................6

*Talley v. City of Cleveland*,
2015 U.S. Dist. LEXIS 8730 (N.D. Ohio Jan. 26, 2015) (Polster, J.) ......................................1

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002)..................................................................................................8

*Vaupel Textilmashin Kg v. Meccanica Euro Italia SpA*,
944 F.2d 870 (Fed. Cir. 1991)................................................................................................3, 4

*Wago Verwaltungsgesellschaft Mbh v. Rockwell Automation*,
2012 U.S. Dist. LEXIS 30703 (N.D. Ohio Mar. 7, 2012) (Boyko, J.) ....................................8

*Wald v. Mudhopper Oilfield Servs.*,
2006 U.S. Dist. LEXIS 51666 (W.D. Okla. July 27, 2006)....................................................10

*Wilson Sporting Goods Co. v. David Geoffrey & Associates*,
904 F.2d 677 (Fed. Cir. 1990)....................................................................................................9

**Statutes**

35 U.S.C. 271(b) ..........................................................................................................................7

35 U.S.C. 271(c) ..........................................................................................................................6

**Other Authorities**

Fed. R. Civ. P. 15(a) ....................................................................................................................5

Fed. R. Civ. P. 15(c)(1).................................................................................................................1

Fed. R. Civ. P. 19..........................................................................................................................1

Article III, Section 2 of the United States Constitution ...........................................................2, 6

Ajax's lack of standing at the inception of this action cannot be cured by its repeated attempts to amend the pleadings or the arguments in Plaintiffs' Opposition. [1] Defendants have raised substantial challenges to the justiciability of Plaintiffs' claims, and Plaintiffs have failed to rebut those attacks. Defendants' Opening Brief (ECF # 38-1) carefully deconstructed the facts of this case, and applied the relevant law to those facts. That analysis overwhelmingly supports Defendants' Motion to Dismiss (ECF # 38). In contrast (even though such attempts would have been futile), Plaintiffs' Opposition (ECF # 42) is completely devoid of any attempts to distinguish the cases cited by Defendants. Thus, Defendants' Motion To Dismiss For Lack Of Standing And Failure To State A Claim under Fed. R. Civ. P. 12(b)(1) & 12(b)(6) should be granted, and Ajax's claims dismissed with prejudice. [2]

---

[1] Ajax's reliance on Fed. R. Civ. P. 15(c)(1)'s 'relation back' exception is misplaced. (ECF # 42 at p. 7 n.1). This exception is not a mechanism to end around Fed. R. Civ. P. 19 and/or 20. Yet, Ajax still attempts to support its improper amendment and addition of parties by asserting that Specifix, Equipment, Holdings (collectively, the "Ajax Family Members") and Ajax "are, in essence, proceeding as one entity." (*Id.* at p. 7 n.1). The single case Ajax cites in support of this assertion, *Am. Coe. Ass'n v. City of Louisa Water & Sewer Comm'n.*, 2009 U.S. Dist. LEXIS 131652 at *28-30 (E.D. Ky. Feb. 27, 2009), is inapposite. That case deals with the addition of parties in the context of relation back and the statute of limitations. *Id*. There, the court permitted addition of a party where the two parties (a city and the city's water commission) were "in essence one entity." *Id*. The same is not true for Ajax Family Members and Ajax. (ECF # 42 at p. 7 n.1). Ajax blurs these distinctions in its Opposition Brief, identifying the Ajax Family Members as both Ajax's "business (trading) names," as well as "its affiliated corporate entities." (*Id*. at p. 1). Ajax must do more than assert that this Court should disregard the corporate separateness of these entities to maintain its claim.

[2] Plaintiffs' Opposition fails to fully address AllFasteners' arguments, and only includes a direct response to one of them. (ECF # 42 at p. 16). Thus, this Court should find each of Ajax's asserted claims abandoned, and dismiss them all with prejudice. In the Sixth Circuit, a plaintiff abandons her claim when she fails to address it in response to a dispositive motion. *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013), *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."); *Talley v. City of Cleveland*, 2015 U.S. Dist. LEXIS 8730, at *5-6 (N.D. Ohio Jan. 26, 2015) (Polster, J.) (dismissing claims for lack of standing, finding that the plaintiff abandoned those claims by failing to respond to arguments raised by the defendant's motion to dismiss).

## I. LAW AND ANALYSIS

### A. Ajax's Cause of Action for Infringement of the '709 Patent Must be Dismissed

#### 1. Ajax Incurably Lacks Standing to Maintain An Infringement Action

Standing is measured at the inception of an action, and Ajax lacked standing at inception of this action. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992). Ajax's lack of standing cannot be cured by post-inception argument or amendment. *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993). Ajax fails to carry its burden in response to AllFasteners' factual attack that Ajax lacks standing to assert infringement of the '709 Patent.[3] Ajax makes two points in attempting to rebut AllFasteners' factual attack: (1) pointing to an unexecuted purchase agreement that only introduces more standing questions (the "2007 Unexecuted Purchase Agreement"); and (2) introducing brand new claims of contributory infringement and direct infringement by AllFasteners' customers. Neither of these fix the standing issue.

##### *a. There is No Article III Injury-in-Fact Because Ajax was Not an Owner Or Exclusive Licensee of The '709 Patent at the Time of Filing this Action*

Ajax agrees with AllFasteners (*see* ECF # 38-1 at pp. 8-10, Section IV.A.1.a) that the License Letter (ECF # 38-5), which Ajax asserts licensed rights in the '709 Patent from Equipment to Ajax, was executed in January 2007, and the Deed of Assignment (ECF # 38-4), allegedly assigning rights in the '709 Patent from GEF to Equipment, was executed November 2012. (ECF # 42 at pp. 11-12). It logically[4] follows that from January 2007 through November 2012, GEF still held title to the '709 Patent and the application from which it issued, and no such

[3] A factual attack challenges the factual existence of subject matter jurisdiction. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996). The Court's inquiry is limited to determining whether the challenged pleadings sufficiently demonstrate that the Court has jurisdiction over the subject matter; "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence." *Id*. In response, the plaintiff "bears the burden of demonstrating standing and must plead its components with specificity." *Coyne v. American Tobacco Company*, 183 F. 3d 488, 494 (6th Cir. 1999)).

[4] Plaintiffs arrive at a different conclusion based on those agreed facts. (*Id*. at p. 12).

rights were or could have been licensed to Ajax from Equipment before 2012. The License Letter did not provide a basis for Ajax to enforce the '709 Patent.[5]

Ajax failed to carry its burden in response to AllFasteners' factual attack that Ajax lacks standing to assert infringement of the '709 Patent. Plaintiffs only point to an unexecuted purchase agreement (the "2007 Unexecuted Purchase Agreement") to rebut AllFasteners' factual attack. On its face, this document does not affect AllFasteners' previous analysis and only introduces more unanswered questions regarding Ajax's standing.

The 2007 Unexecuted Purchase Agreement contemplates the transfer of certain intellectual property from GEF Holdings Pty Limited ("GEF") to Equipment. (*See, e.g.*, ACME_00183-ACME_00242, available at ECF # 43-2) (referring to GEF as "GEFH"). The 2007 Unexecuted Purchase Agreement defines GEF Intellectual Property as "the patents, patent applications . . . in the name of GEF, as identified in Schedule 2 or other patents, patent applications . . . solely used in the conduct of the Business." (*Id*. at ACME_00194, clause 10) (emphasis added). Notably, that definition does not describe all patent applications "in the name of GEFH," but limits its scope to two categories: (1) those identified in Schedule 2; and (2) those solely used in the conduct of the Business. *Id*. There is no evidence that either Equipment or GEF intended the '709 Application to fall into either of those categories. Neither the title of the '709 Application (IMPROVEMENTS IN RELATION TO BLIND BOLTING), nor its application number (11/457,874) are identified in Schedule 2 to the 2007 Unexecuted Purchase Agreement. (*Id*. at ACME_00238). Additionally, there is no indication that the parties intended[6]

---

[5] *Alps South, LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1382-86 (Fed. Cir. 2015) (court erred in denying defendant's motion to dismiss for lack of standing because plaintiff had not established that patent owner retained no substantial rights in the asserted patent at the time plaintiff filed suit and that lack of standing was not curable by a *nunc pro tunc* license).

[6] Ajax misstates the holding of *Vaupel Textilmashin Kg v. Meccanica Euro Italia SpA,*

the '709 Application be included in the second category, as *solely used in the conduct of the Business registered or licensed in the name of GEF*.

Assuming arguendo that the '709 Application was included in the GEF Intellectual Property, which it was not, the 2007 Unexecuted Purchase Agreement presents more hurdles Ajax has yet to clear before it can prove it has standing to assert infringement of the '709 Patent. Clauses 1.7, 2.1, and 3.2(a)-(g) of the 2007 Unexecuted Purchase Agreement set forth conditions precedent that must be completed prior to any transfer of the GEF Intellectual Property (*see* clause 3.6). The only indication that each condition precedent might have been completed is the handwritten acknowledgment adjusting the Completion Date from "22 January 2007" to "9 February 2007." (*Id*. at ACME_00193). Furthermore, the 2007 Unexecuted Purchase Agreement **was not executed by GEF**. (*Id*. at ACME_00196).

---

944 F.2d 870, 875 (Fed. Cir. 1991) when it asserts that "it is well settled that successors in title to a patentee have the right to enforce a patent, and such rights can be determined ***either*** by the writing transferring the patent rights, ***and/or*** by the intent of the parties." (ECF # 42 at p. 12) (emphasis added). In *Vaupel*, the court stated that "[t]o determine whether a provision in an agreement constitutes an assignment or a license, one must ascertain the intention of the parties ***and*** examine the substance of what was granted." 944 F.2d at 874 (emphasis added). *Vaupel* does not provide an alternative between the writing or intent of the parties, but rather provides that the writings must be construed in light of the intent of the parties. 944 F.2d at 874-75.

Even if the Court disregarded the absence of a signature by the purported assignor (GEF), additional facts contradict Ajax's claim of standing. Namely, the 2007 Unexecuted Purchase Agreement was not even plausibly "complete" until February 9, 2007, such that at the time of the purported license from Equipment to Ajax, January 31, 2007, Equipment held no right to license. Thus, if Ajax is relying on the 2007 Unexecuted Purchase Agreement to demonstrate its right to enforce the '709 Patent, Ajax's claim fails. Because the 2007 Unexecuted Purchase Agreement was not purportedly completed until February 2007, the January 2007 License Letter could not convey any rights to the '709 Patent, and cannot show that Ajax ever received any rights, much less 'all substantial rights' to the '709 Patent or the application that issued as the '709 Patent.

If reality were stretched even further, and it is assumed that the License Letter effectively transferred the rights originally held by GEF (which it did not), Ajax still lacks standing to assert infringement of the '709 Patent.[7] The License Letter does not identify the '709 Patent or the application that led to the '709 Patent, but purports to grant Ajax with "the authority to use, market, enforce and act on behalf of [the purported patent owner, ACME Equipment Pty Ltd] in relation to all **patents** held in the company's name." (ECF # 38-5) (emphasis added). The '709 Patent, however, did not issue until May 20, 2008. At the time the License Letter was executed, January 31, 2007, only a pending patent application existed that was related to the '709 Patent, not an actual patent. A 'patent' is distinct from a 'patent application.'

Thus, at the time of filing its Complaint, Ajax held **no** right to exclude others from practicing the '709 Patent. And, despite Ajax's repeated[8] attempts to amend its Complaint (ECF

[7] *Paradise Creations, Inc. v. U V Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003).

[8]Ajax's counsel erroneously believed that Ajax was permitted unlimited amendments as a matter of course. Although this Court's October 20, 2015 Order did not explicitly limit the number of re-filings permitted as a matter of course and without leave (*see Baxter v Strickland*, 381 F. Supp. 487 (N.D. Ga. 1974)), the Court gave no indication that it intended to abrogate Fed.

# 35 and ECF # 37), this "jurisdictional defect cannot be cured by the addition of a party" that might have standing. *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005). For at least these reasons, Ajax cannot establish that it suffered an injury-in-fact prior to the onset of the suit, and thus, lacks standing to pursue infringement of the '709 Patent.

*b. There is No Article III Causation Because, As A Matter Of Law, A Method Claim Cannot Be Infringed By The Manufacture And Sale Of A Product*

The method claims of the '709 Patent are not infringed by the Accused Instrumentality because a device cannot infringe a method claim. (*See generally* ECF # 38-1 at Section IV.A.1.b). Ajax did not challenge the applicability of *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1579 (Fed. Cir. 1993) and *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774-75 (Fed. Cir. 1993) to the facts of this case. Instead, Ajax made two new, never before asserted, charges of infringement in this action: (1) contributory infringement under 35 U.S.C. 271(c); and (2) direct infringement by AllFasteners' customers. (ECF # 42 at pp. 13-16). Ajax, however, failed to

---

R. Civ. P. 15(a) ("A party may amend its pleading once as a matter of course," and thereafter "only with the opposing party's written consent or the court's leave."). Ajax also incorrectly suggests that AllFasteners "agreed" to Ajax's ability to unlimited amendments. (ECF # 42 at p. 1) (citing to the Report of the Parties Planning Meeting (ECF # 30)). But, Ajax's Planning Meeting proposal indicated only a <u>single</u> amendment to the pleadings (*see* ECF # 30 at pp. 2 and 5), and AllFasteners explicitly rebutted that single proposed amendment as futile (*id*. at p. 5).

While it is correct that a dismissal under Rule 12(b)(1) allows for the possibility of re-filing the dismissed party's complaint, that proposition refers to re-filing in a <u>new action</u> and only holds true for those claims for which each of the two conditions apply: (1) the claim was dismissed without prejudice; and (2) the court has original or pendant jurisdiction over those claims. (*Compare* ECF # 42 at p. 9 (characterizing this proposition as applying to "re-pleadings" within the instant action), *with Kobaivanova v. Hansen*, 2011 U.S. Dist. LEXIS 105252, at *8 (N.D. Ohio Sept. 16, 2011)). Here, the proposition would only hold true for those claims for which: (1) the claim was dismissed without prejudice; (2) the dismissed party has not repeatedly failed to cure deficiencies by amendments previously allowed; (3) amendment would not cause undue prejudice to the opposing party; (4) amendment would not be futile; and (5) the court has original or pendant jurisdiction over those claims. *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003). As demonstrated in Defendants' Motion to Dismiss, Ajax should not be permitted to amend because any amendments are futile and would be made in bad faith (*see GSS Props., Inc. v. Kendale Shopping Center, Inc.*, 119 F.R.D. 379, 381 (M.D.N.C. Mar. 15, 1988) (citation omitted).

plead even the barest of facts to support these claims.[9] Prior to service of Plaintiffs' Opposition, the only type of indirect infringement Ajax asserted was induced infringement under 35 U.S.C. 271(b). (ECF # 1 at ¶¶ 75-78 (". . . indirectly infringes . . ." and ". . . willful inducement of infringement . . .")). And, to support the originally asserted induced infringement claim, the original Complaint, which made no reference to alleged infringement by AllFasteners' customers, only identified AllFasteners' sub-component manufacturers as direct infringers of the method claims of the '709 Patent. (ECF # 1 at ¶ 76 ("Defendants, jointly and severally, have induced the . . . manufacturers of the NexGen2 products to infringe . . . and such inducement of infringement . . . is willful")).

Ajax's attempted recasting of its original Complaint confirms that the original Complaint is deficient, and that Ajax could not refute AllFasteners' arguments. Ajax also found a case to shoehorn its newly raised infringement theory into—*Ricoh Co. Ltd v. Quanta Storage Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008) — and Ajax's entire rebuttal in Section III.B.2 of its Opposition Brief is devoted to doing so. However, the holding from *Ricoh* does not extend to allegations of induced infringement. And, the *Ricoh* case does not mitigate Ajax's failure to properly allege a claim for contributory infringement or direct infringement by customers.

Ajax also failed to defend its induced infringement theory in light of AllFasteners' challenge. Ajax needed to point to plausible facts that enabled at least an inference that AllFasteners knew that placing orders for sub-components of the Accused Instrumentality would

[9] An allegation of contributory infringement requires pleading that a party sells a component for use in practicing a patented process and that component is material to practicing the invention, has no substantial non-infringing uses, and is known by the party "to be especially made or especially adapted for use in an infringement of such patent." 35 U.S.C. 271(c). At a minimum, Ajax has never pled hat the NexGen2 bolt has no substantial non-infringing uses. Furthermore, the NexGen2 bolt is not limited to use in blind bolt applications requiring engagement with a tool.

result in direct infringement of the '709 Patent, and that AllFasteners placed those orders with the specific intent of encouraging direct infringement. But, Ajax could not, cannot, and has not plausibly pled such facts because there can be no direct infringement of a method claim by the Accused Instrumentality or a single sub-component. *Mendenhall*, 5 F.3d at 1579.

### 2. Ajax Fails to State a Claim of Infringement of the '709 Patent under Any Reasonable Claim Construction of 'Moveable Member'

#### *a. As a Matter of Law, the Accused Instrumentality Cannot Literally Infringe the '709 Patent Because it Practices the Prior Art*

Unbound by the canons of claim construction[10] and logic, Ajax does not and cannot rebut AllFasteners' reasoning that the '709 Patent explicitly disavows[11] from its permissible claim scope the ***threaded-type*** engagement taught by the prior art PCT '113 Application. Indeed, Ajax admits that the PCT '113 Application discloses the ***threaded-type*** engagement (referred to as 'tedious' in the '709 Patent), and Ajax fails to deny that—excepting the type of engagement disclosed—the PCT '113 Application and the '709 Patent share an identical claim scope. (ECF # 42 at p. 18). Ajax also admits that the "means to attach and detach the bolt and tool" used in the Accused Instrumentality and the embodiments disclosed in the '709 Patent are not structural equivalents to one another. (*Id*. at pp. 18-19) (". . . excepting the means to attach and detach the bolt and tool, every other feature and structure of the NexGen2 is identical to the OneSide.") (emphasis added). The ***threaded-type*** engagement practiced by the Accused Instrumentality—and the prior art—cannot literally read on the 'moveable member' claimed in the '709 Patent.

---

[10] Contrary to Ajax's contention that construction of the claim term 'moveable member' is premature (ECF # 42 at p. 16), claim construction is a legal question and can be determined on a motion to dismiss. *See Wago Verwaltungsgesellschaft Mbh v. Rockwell Automation*, 2012 U.S. Dist. LEXIS 30703, *13 (N.D. Ohio Mar. 7, 2012) (Boyko, J.); *Conoco, Inc. v. Energy & Envt'l Int'l, LC*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) ("[A] district court may engage in claim construction during various phases of litigation.").

[11] *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).

Ajax refused to substantively address AllFasteners' proposed claim construction of 'moveable member' and instead asks this Court to avoid making any construction at this time. Nonetheless, Ajax effectively concedes that 'moveable member' should be construed as a means-plus-function term under Section 112(f), referring to the 'moveable member' multiple times as a "means." *Mas-Hamilton Group v. LaGard, Inc.*, 21 F. Supp. 2d 700 (E.D. Ky. 1997). Ajax also implies that any means that performs the function of preventing separation between bolt and tool will read on 'moveable member,' including those means in the prior art. (ECF # 42 at pp. 18-19). But, there can be no infringement under such a means-plus-function construction because Ajax concedes that the ***threaded-type*** engagement practiced by the Accused Instrumentalities is not a structural equivalent to the corresponding structure[12] disclosed in the '709 Patent. The only alternative construction would render the term 'moveable member' indefinite. *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311-12 (Fed. Cir. 2012).

*b. As a Matter of Law, the Accused Instrumentality Cannot Infringe Under the Doctrine Of Equivalents Because Equivalents Cannot Encompass the Prior Art*

Ajax also chose not to dispute AllFasteners' application of *Wilson Sporting Goods Co. v. David Geoffrey & Associates*, 904 F.2d 677, 683 (Fed. Cir. 1990) in this case. In response to AllFasteners' argument that the PCT '113 Application forecloses Ajax's ability to recapture threaded-type connections under the doctrine of equivalents, Ajax's referred only to a single block quote from a case discussing obviousness without further explanation or application. (ECF # 42 at p. 19). Thus, judgment in AllFasteners' favor is appropriate as to infringement under the doctrine of equivalents because the written description criticizes the prior art[13] feature for which

[12] The corresponding structure identified in the specification is the ***socket-type*** 'stud' that moves relative to the bolt and the tool. '709 Patent at 6:7-14, 7:37-39, 7:43-45, 8:29-33, 8:57-63.

[13] It is well understood that there can be no infringement under the doctrine of equivalents "if the asserted scope of equivalency of what is literally claimed would encompass the prior art."

equivalency is sought. Ajax failed to provide any alternative explanation for the specification's clear disavowel of threaded-type engagement. (*See* ECF # 38-1 at Section IV.A.2.b).

**B. Ajax Fails to Sufficiently Plead Violations of the Lanham Act**[14]

Defendants provided numerous grounds effectively challenging Ajax's standing to assert claims under the Lanham Act based on Ajax's inability to sufficiently plead proximately caused injuries. (*See* ECF # 38-1 at Section IV.B). In rebuttal, Ajax cites to a single (newly added) paragraph from its Second Amended Complaint (ECF # 42 at p. 20), which reads:

> Through the marketing and sales of materially inferior and unsafe NexGen2 products, which are visually indistinguishable from the genuine OneSide products, Defendants have engaged in dilution of Ajax's business identity and the OneSide product identity and damaged Ajax's reputation all of which constitute unfair trade practices in violation of the Act.

(ECF # 37 at ¶ 98). These bald conclusions cannot save Ajax's Lanham Act claims. As set forth in greater detail in Defendants' Opening Brief, and highlighted again below, Ajax fails to sufficiently plead violations of the Lanham Act.

---

*Wald v. Mudhopper Oilfield Servs.*, 2006 U.S. Dist. LEXIS 51666, *18 (W.D. Okla. July 27, 2006) (quoting *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677, 683 (Fed. Cir. 1990) (also cited in ECF # 38-1 at pp. 15-16 ). While the statement in *Wald* that "[t]he mere existence of an element in the prior art [does not] automatically preclude [Plaintiffs] from asserting a scope of equivalency sufficient to encompass the corresponding element in the accused device," 2006 U.S. Dist. LEXIS 51666 at *20 (substitutions in original), is correct, the statement in context contradicts Ajax's position. Immediately prior to that carefully selected statement, the *Wald* court stated that "[t]he purpose of the limitation that prior art restricts the scope of equivalency is to prevent a party from obtaining coverage that could not lawfully have been obtained by the literal claims." *Wald*, 2006 U.S. Dist. LEXIS 51666 at *19-20 (quoting *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1576-77 (Fed. Cir. 1994). A hypothetical, rewritten version of claim 1 of the '709 Patent that would literally cover the Accused Instrumentality with its threaded-type engagement would have been barred by law because of Ajax's disavowal of such an instrumentality as practicing the prior art, (ECF # 38-1 at pp. 13-14), and such coverage is not properly recaptured by the doctrine of equivalents.

[14] To the extent that Ajax now asserts that it has pled a claim of dilution under the Lanham Act, any such claim also would require dismissal because of Ajax's inability to sufficiently plead proximately caused injuries of the type protected or any "distinctive quality" of a "famous mark." *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 432 (2003).

**1. Dismissal of Ajax's Trade Dress Infringement Claim is Proper**

Rather than directly responding to Defendants' arguments regarding the insufficiency of Ajax's trade dress infringement claim in terms of functionality and consumer confusion, Ajax offered conclusory statements and unguided citations to fifteen paragraphs of the Complaint (ECF # 42 at pp. 22-23). This cannot save Ajax's failure to address all of the arguments advanced by Defendants.

Ajax cites *Dayco Prods., LLC v. Dorman Prods.*, 2010 U.S. Dist. LEXIS 102785 (E.D. Mich. Sept. 28, 2010) to support the proposition that attaching a photograph to a complaint will automatically save a trade dress claim from dismissal. (ECF # 42 at pp. 21-22). The holding in *Dayco*, however, does not stretch as far as Ajax would like.[15] A trade dress claim must include a <u>specific identification</u> of the protectable features of the asserted trade dress, whether that identification comes from a purely textual narrative, a purely pictorial representation, or some combination of the two. *General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 416 (6th Cir. 2006) (holding that plaintiffs must detail "exactly what the[ir] trade dress consists of"); *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 310 (3rd Cir. 2014) (holding that trade dress infringement claims that merely plead generic elements of a website design will not survive a motion to dismiss, rather such claims must specifically allege a composite look that might constitute a protectable trade dress).

Although cited to support Ajax's argument, the holding in *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735 (E.D. Mich 2014) only serves to hinder Ajax's reliance on

[15] In *Dayco*, specific identification of the protectable features of the asserted trade dress was accomplished by attaching three types of images to the complaint: (1) plaintiff's images containing the asserted trade dress features; (2) defendant's images containing the asserted trade dress features; and (3) images of a third party that did <u>not</u> contain any of the asserted trade dress features. 2010 U.S. Dist. LEXIS 102785, at *17-18. The third party 'control' images permitted specific identification of the asserted trade dress features by comparison with the other images.

*Dayco*. In *Mike Vaughn,* the District Court for the Eastern District of Michigan dismissed the plaintiff's Lanham Act trade dress claims for failing to specifically allege features composing the trade dress in light of the pleading standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). 15 F. Supp. 3d at 745. Similar to the plaintiff in *Dayco,* the plaintiff in *Mike Vaughn* had attached pictures of the website to the complaint, but the court could not "distill from the images what the plaintiff claims as protected trade dress or identify what is non-functional about its product design." *Id*. at 747. The same is true here.

Accordingly, this Court does not have jurisdiction over Ajax's barebones allegation of trade dress infringement (ECF # 1 at ¶ 81-83; ECF # 35 at ¶ 98) at least because, as a matter of law, no cognizable right exists in protecting functional features, and because Ajax failed to plead any facts to evidence consumer confusion that proximately caused an injury to Ajax. (*See* ECF # 38-1 at Section IV.B.1). Ajax also cannot remedy its failure to identify what specific elements of its purported trade dress are protectable, or that the purported trade dress is inherently distinctive.

**2. Dismissal of Ajax's False Advertising Claims is Proper**

Instead of choosing to voluntarily dismiss its claims of false advertising, Ajax chose to respond to Defendants' detailed challenges with only two substantive sentences:

> Indeed, Ajax alleged that AllFasteners' misrepresents its NexGen2 as "a grad[e] A-490" fastener that is manufactured in the USA, that AllFasteners provided improper product certifications, and that AllFasteners misrepresents its product as conforming to legal and industry standards. (Doc.1, Complaint at ¶¶51,56,58-61,63,81; Doc. 37, Second Amended Complaint, ¶¶59,66,68-71,74,85,95.) Ajax also alleged that AllFasteners misrepresentations are made on its website and on YouTube videos and are designed to gain an improper and prohibited advantage in the U.S. market and that, as a result, AllFasteners has diluted Ajax's business identity, the OneSide product identity and damaged Ajax's business reputation. (*Id*. at ¶85.)

(ECF # 42 at p. 23-24). Yet, neither of these two sentences, nor Ajax's statement of the law or the conclusions that couch them, can save Ajax's false advertising claims. Ajax failure to respond to the arguments raised by Defendants amounts to an abandonment of those claims.

Ajax lacks standing to assert its false advertising claims because it has not, and cannot as a matter of law, plausibly allege that AllFasteners' statements are 'provably false' or that any consumer deception occurred. (*See* ECF # 38-1 at Section IV.B.2). Nor, has Ajax alleged any proximately caused injury. Defendants analyzed the sufficiency of Ajax's false advertising claims as to each purportedly *false statement*. But because neither of the statements challenged by Ajax are unambiguously false in light of the FTC and FQA guidelines, and the Complaint is devoid of allegations of consumer deception resulting from the challenged statements, no standing exists. Ajax did not even address these arguments.[16]

**C. Ajax Fails to Sufficiently Plead Misappropriation of Any Trade Secrets**

Ajax fails to state a claim of trade secret misappropriation because it has not identified with specificity the information that it alleges is confidential and that was misappropriated. *Rainworks Ltd. v. Mill-Rose Co.*, 622 F. Supp. 2d 650, 657-58 (N.D. Ohio 2009). Additionally, Ajax cannot proceed because it did not allege that it took reasonable efforts to maintain the secrecy of any of its purportedly confidential information. *Mar Oil Co. v. Korpan*, 2011 U.S. Dist. LEXIS 121706, *12 (N.D. Ohio Oct. 20, 2011). Accordingly, this cause of action also should be dismissed with prejudice. Plaintiff's conclusory allegation that AllFasteners misappropriated its trade secrets does not suffice. *See, e.g.*, *Jaro Transp. Servs. v. Grandy*, 2006 U.S. Dist. LEXIS 62932, at *34-42 (N.D. Ohio Sept. 5, 2006).[17]

[16] Ajax completely refused to respond to Defendants' analysis of each of the following cases that show Ajax has no standing to assert its claims of false advertising: *New Colt Holding Corp. v. RJG Holdings of Fla., Inc.*, 312 F. Supp. 2d 195, 234-35 (D. Conn. 2004); *Prakash v. Altadis U.S.A., Inc.*, 2012 U.S. Dist. LEXIS 46337, *27-29 (N.D. Ohio Mar. 30, 2012); *A.P. Deauville, LLC v. Arion Perfume & Beauty, Inc.*, 2014 U.S. Dist. LEXIS 173073, at *10-14 (N.D. Cal. Dec. 12, 2014); *Honeywell Int'l Inc. v. ICM Controls Corp.*, 45 F. Supp. 3d 969, 988 (D. Minn. 2014).

[17] Again, Ajax chose not to respond to any of the precedential case law AllFasteners' cited and relied on in relation to the charge of trade secret misappropriation.

Even if Ajax did properly identify[18] its purported trade secrets, which it did not, its allegation of misappropriation is trumped by Ajax's admission that it expressly authorized AllFasteners to disclose "material specifications, manufacturing technology and know-how" to the public for the purpose of "effectively market[ing] the ONESIDE." (ECF # 1 at ¶ 64; ECF #42 at p. 25). Thus, this Court does not have jurisdiction over Count III because, as a matter of law, there can be no cognizable right of trade secret in information that is not kept secret.

**D. Ajax Fails to Sufficiently Plead that Defendants Breached the Agreement**

Ajax concedes that its breach of contract claim rises and falls with its trade secret misappropriation claim. Subsequently, both claims fail because Ajax admits that it has given AllFasteners permission to disclose purported trade secret information to third parties without any restriction on its further dissemination. (ECF # 1 at ¶ 64). Furthermore, Ajax's lone defense of its implausible and untimely agency theory is to ask this Court to disregard the corporate separateness between AllFasteners and the actual party to the Confidentiality Agreement without reference to any facts to support this newly concocted theory. *Cleveland Thermal Steam Distrib., LLC v. Carlyle Leader, LLC*, 2015 U.S. Dist. LEXIS 58265 (N.D. Ohio May 4, 2015).

AllFasteners challenged Ajax's standing to assert Count IV at inception of this lawsuit because neither party to the Confidentiality Agreement was a party to this suit. (*See* ECF # 38-1 at Section IV.D). In response Ajax shifted strategies and improperly added one of the parties to the Confidentiality Agreement as a new plaintiff (Specifix) while blindly arguing its incomplete and new agency theory. Failing to contest AllFasteners attack, Ajax concludes (ECF # 42 at p.

[18] Ajax further fails to rebut the insufficiency of its trade secret misappropriation claim when it attempts to distinguish the "purpose" of Ajax permitting third party disclosure of the only Ajax documents specifically identified as including any confidential information. (ECF # 21 at pp. 4-5 and 17) (discussing that the only Ajax documents AllFasteners received that were designated "COMMERCIAL IN CONFIDENCE," Ajax specifically instructed AllFasteners to publicly share those documents).

26)—without citation to any factual support—that: (1) the Confidentiality Agreement was executed *on behalf of* AllFasteners (*compare* FAC at ¶¶ 44-45, *with* ECF # 1 at ¶ 38)—it was not; and (2) that the party to the Confidentiality Agreement "does business in the United States exclusively through Defendants" (*see also* FAC at ¶ 10). This cause of action should be dismissed because the Confidentiality Agreement attached to the Complaint plainly and materially contradicts Ajax's pleadings regarding the parties to the contract and Ajax fails to allege a power to bind between the purported agent and principal. *Midkiff v. Adams Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (finding amendment of the pleadings to add an agency theory futile because as amended the pleading could not withstand a motion to dismiss, and because the plaintiff had not even alleged that the principal had the right to control the agent).

## II. CONCLUSION

For at least the foregoing reasons, AllFasteners respectfully request that this Court grant Defendants' Motion to Dismiss, and dismiss all of Ajax's causes of action with prejudice.

Dated: December 7, 2015

Respectfully submitted,

*/s/ Arthur P. Licygiewicz*

Arthur P. Licygiewicz (0068458)
John R. Mitchell (0066759)
Christopher M. Comiskey (0090297)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114-1291
(216) 566-5500
(216) 566-5800 (fax)
Art.Licygiewicz@ThompsonHine.com
John.Mitchell@ThompsonHine.com
Christopher.Comiskey@ThompsonHine.com

***Attorneys for Defendants***

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of December 2015 the foregoing *Reply Memorandum in Support of Defendants' Motion To Dismiss For Lack Of Standing And Failure To State A Claim* was filed electronically with the Clerk of the Court using CM/ECF and that the foregoing was served upon the following via electronic mail:

Robert W. McIntyre (0006768)
Angela M. Lavin (0069604)
Peter A. Holdsworth (0075211)
Wegman Hessler & Vanderburg
6055 Rockside Woods Blvd, Suite 200
Independence, OH 44131
rwmcintyre@wegmanlaw.com
amlavin@wegmanlaw.com
paholdsworth@wegmanlaw.com

By: /s/ *Christopher Comiskey*
Christopher Comiskey
***Attorney for Defendants***