UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SPECIFIC FASTENERS PTY LTD., ET AL., | ) ) ) | CASE NO.1:15CV1366 |
| Plaintiff, | ) ) | JUDGE CHRISTOPHER A. BOYKO |
| Vs. | ) ) | |
| ALLFASTENERS USA LLC., ET AL., | ) ) | OPINION AND ORDER |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Standing and Failure to State a Claim (ECF # 38). For the following reasons, the Court grants, in part, Defendants' Motion.[1]

This is a patent infringement and trade secrets action by Plaintiff Specific Fasteners

---

[1] Defendants' Motion to Dismiss presents both lack of standing and failure to state a claim arguments. Because standing is determined at the inception of the case, this requires the Court to examine the claims and allegations made in Plaintiff's original Complaint. Failure to plead requires examination of the claims and allegations in the operative Complaint. In light of these distinct inquiries and for purposes of clarity, the Court will address standing in this opinion and, for those claims that survive the standing analysis, the Court will address in a separate forthcoming opinion Defendants' failure to plead arguments.

Pty, Ltd., Acme Equipment Pty. Ltd., ("Equipment") both Australian companies and ACME Operations, an Australian Company doing business in the USA as Ajax Engineered Fasteners ("Ajax"). Defendants All Fasteners USA LLC and All Fasteners Enterprises LLC are Ohio companies and All Fasteners LA LLC is a California limited liability company. Plaintiffs refer to all three Defendants collectively as Allfasteners. Defendants were at one time authorized resellers of Plaintiffs' ONESIDE products which consist of a unique bolt, washers and installation tool (the '709 patent) used to fasten steel structures such as cell phone towers where the head of the bolt is not accessible to tools. It is unique in that the bolt can be fastened as the name implies from one side of a structure.

According to Plaintiffs, Defendants, as former resellers for Plaintiff, had access to confidential information allowing Defendants to recreate Plaintiffs' ONESIDE bolt and resell the infringing design under the name NexGen. According to Plaintiffs, Specifix and Ajax entered into a confidentiality agreement with Allfasteners in 2013. Pursuant to the agreement, Plaintiffs disclosed confidential engineering, manufacturing, product and material specifications and other confidential information concerning the ONESIDE product to Defendants. Plaintiffs contend Defendants developed a competing and infringing product. Plaintiffs further contend Defendants' product lacks the strength of Plaintiffs' and presents a risk to the public due to its inferior quality. Plaintiffs allege Defendants misrepresent the nature and quality of their competing product

Plaintiffs' Second Amended Complaint alleges claims for patent infringement by the NexGen products, Lanham Act violations for trade dress violations and misrepresenting the nature characteristics and qualities and origin of Defendants' product and breach of the

confidentiality agreement and theft of trade secrets under Ohio law.

**Defendants' Motion to Dismiss**

Defendants' Motion to Dismiss challenges the standing of Ajax to assert its claims at the time of the filing of the original Complaint.  Plaintiffs' original Complaint was brought solely on behalf of Ajax.  Although Plaintiffs have subsequently amended their Complaint twice, these amendments did not add new claims but instead added new plaintiffs.  However, these amendments are immaterial to a determination of standing because jurisdiction is determined from the inception of the case. *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94-95 (1998).   According to Defendants, Ajax lacked standing to assert the claims alleged in the original Complaint.  First, Defendants contend Ajax was not the owner or exclusive licensee of the '709 patent at the time it brought suit against Defendants. Plaintiffs' original Complaint alleged Ajax was solely and exclusively authorized by the patent owner to practice and enforce the '709 patent.  In support of its allegation, Plaintiffs offered a licence letter dated January 31, 2007 wherein ACME Equipment Pty Ltd, the purported owner of the '709 patent, as of the date of the letter, granted Ajax "the authority to use, market, enforce and act on behalf of {the patent owner} in relation to all patents held in the company's name."  However, the '709 patent did not issue until May 20, 2008. Therefore, Defendant contends Ajax lacked any interest in the patent at the time of the filing of the original Complaint on July 9, 2015.

Defendants further allege Ajax's original Complaint failed to allege an injury-in-fact proximately caused by Defendants alleged trade dress violations, false advertising and theft of Ajax's trade secrets.   Furthermore, neither Ajax nor the Defendants were parties to the

3

Confidentiality Agreement, therefore, Ajax lacks standing to assert a breach thereof.

## LAW AND ANALYSIS

**Standing**

The Constitution limits federal court jurisdiction to actual "cases" or "controversies." U.S. Const., art. III, § 2, cl. 1. Standing to sue is one aspect of the case-or-controversy requirement. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) citing *Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville*, 508 U.S. 656, 663-664 (1993). To have standing, a plaintiff must offer evidence that shows: (1) the plaintiff has suffered an injury in fact, which is further defined as a violation of "a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) a causal connection between the injury and the defendant's conduct; and (3) a favorable decision will likely redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

**Civil Rule 12(b)(1) Standard**

Fed. R. Civ. P. 12(b)(1) states in pertinent part:

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter . . . .

When challenged on a motion to dismiss, it is plaintiff's burden to prove the existence of subject matter jurisdiction. *Rogers v. Stratton Indus.,* 798 F.2d 913, 915 (6th Cir.1986). Such challenges are brought by two different methods: (1) facial attacks and (2) factual attacks. *See, e.g., United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994).

"A *facial* attack is a challenge to the sufficiency of the pleading itself.  On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party."  *Walters v. Leavitt*, 376 F.Supp.2d 746, 752 (E.D. Mich 2005), citing *Scheuer v. Rhodes,* 416 U.S. 232, 235-37 (1974).  "A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction.  On such a motion, no presumptive truthfulness applies to the factual allegations, . . . and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Walters* at 752.

**Infringement and Standing**

Ajax filed its original Complaint on July 9, 2015, therefore, Ajax needed to have either an ownership interest in the patent or an exclusive  license in the patent to have standing to sue.  Subsequent amendments cannot cure a lack of standing.   " In the area of patent infringement, this court has held that if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing..." *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.,* 402 F.3d 1198, 1203 (Fed. Cir. 2005) *citing Paradise Creations, Inc. v. U V Sales, Inc.,* 315 F.3d 1304, 1309 (Fed. Cir.2003).  The evidence presented shows Ajax possessed neither.  First, Ajax admits it does not own the patent as the present owner is Equipment.  Instead, Ajax's original Complaint alleged "Plaintiff is solely and exclusively authorized by the current owner of the '709 Patent, non-party Acme Engineered Holdings Pty Ltd., to practice *and* enforce the '709 Patent against any and all infringing persons or entities, without limitation." (Complaint ¶ 17).

However, the only evidence of such authorization consists of a letter dated January 31, 2007 wherein Equipment authorizes Ajax to "use, market and enforce all patents held in the companies name." The '709 patent had not issued as of January 31, 2007, therefore, this authorization did not convey any rights in the '709 patent.

Furthermore, as of January 31, 2007, Plaintiffs have failed to demonstrate that Equipment had any rights to the '709 patent such that it could assign such rights to Ajax. The '709 patent lists GEF Holdings Pty Ltd as the assignee in 2008. This is further supported by a Fee Transmittal in 2008 showing GEF Holdings as the assignee. Neither Ajax nor Equipment were listed as applicants or inventors on the application.

Plaintiffs offer a Sale and Purchase Agreement purporting to show Ajax's purchase of GEF Holdings Pty Ltd.'s intellectual property in 2007. However, the Agreement was not signed by GEF Holding, contained conditions precedent to the sale of the intellectual property and contains a list of the intellectual property sold that does not list the '709 patent. The date for completion of the sale is February 9, 2007. Yet, a Deed of Assignment dated 2012 shows GEF Holdings assigning its rights to the '709 patent to Equipment, consequently, the evidence indicates that GEF Holdings never sold the '709 patent to Ajax in 2007.[2] This contradicts Plaintiffs' assertion that Ajax obtained rights to the '709 patent in 2007. In short, nothing before the Court shows Ajax was ever assigned rights to the '709 patent. Consequently, the evidence presented with Ajax's original Complaint fails to satisfy Plaintiffs' burden to show Ajax had standing at the time of filing of the Complaint.

---

[2] The Court also notes that the purchaser in the Sale and Purchase Agreement was Ajax Equipment Pty Ltd, not Ajax Engineered Fasteners or ACME Equipment Pty Ltd the Plaintiff in the original Complaint.

Therefore, the Court grants Defendants' Motion to Dismiss Plaintiffs' claim for Patent Infringement without prejudice.

**Lanham Act**

Ajax's original Complaint alleged two causes of action under the Lanham Act. Trade dress infringement under 15 U.S.C. § 1125(a)(1)(A) and misrepresentation of geographic origin and quality under § 1125(a)(1)(B). According to Defendants, Plaintiff Ajax lacked standing to bring either claim.

### Trade Dress

"The Lanham Act, 15 U.S.C. §§ 1051–1141n, encompasses the protection not just of wordmarks and symbols, but also of trade dress." *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.,* 730 F.3d 494, 503 (6th Cir. 2013) citing *Wal–Mart Stores, Inc. v. Samara Bros.,* 529 U.S. 205, 209, 120 S.Ct. 1339, (2000). "Trade dress refers to the image and overall appearance of a product. It embodies that arrangement of identifying characteristics or decorations connected with a product, whether by packaging or otherwise, that makes the source of the product distinguishable from another and promotes its sale." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,* 280 F.3d 619, 629 (6th Cir.2002).

"To prevail on a claim for the infringement of a product-design trade dress, a plaintiff must prove that its allegedly infringed product design (1) is nonfunctional, (2) has acquired secondary meaning, and (3) is confusingly similar to the allegedly infringing product design." *Groeneveld Transp. Efficiency, Inc.,* 730 F.3d at 503*, citing Gen. Motors Corp. v. Lanard Toys, Inc.,* 468 F.3d 405, 414 (6th Cir.2006).

According to Defendants, Ajax failed to plead sufficient facts of a protectable trade

dress, an infringement or injury as a result of the infringement. Specifically, Defendants contend Ajax failed to allege any infringement of a non-functional design element or any specific injury proximately caused by Defendants' alleged copying.

### **False Advertisement**

Plaintiff further alleges Defendants' misrepresent the nature, characteristics, qualities and geographic origin of their product. They falsely represent that their product conforms to industry standards and falsely represent they are "Made in the USA" when in fact, they are not. The United States Supreme Court has held in a false adverting claim that " a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc., v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1391 (2014).

While the Court agrees that Plaintiff must allege specific facts supporting a Lanham Act claim, the inquiry under Fed R. Civ. P. 12(b)(6) is separate and distinct from a claim of lack of standing. In *Lexmark Int'l. Inc.,* at 1386, the United States Supreme Court held that in order to have standing to assert a claim under § 1125(a) of the Lanham Act a plaintiff must have suffered or be imminently threatened with a concrete and particularized injury in fact that is fairly traceable to the challenged action of defendant and is likely to be redressed by a favorable judicial decision." Standing may be determined using either the zone of interest test or the proximate causality test. The zone of interest test is not "especially demanding" and Plaintiff receives the benefit of the doubt. *Id.* at 1389. The Supreme Court further held that a person engaged in commerce within the control of Congress that suffers injuries of lost sales

and damage to its business reputation falls within the zone of interest protected by the Lanham Act. See *Id* at 1393.

Here, Ajax has alleged it is a competitor of Defendants in the sale of fasteners. Plaintiff alleges Defendants secretly developed a competing fastener using trade secrets obtained from Plaintiff while Defendants were authorized resellers of Plaintiff's product. Plaintiff alleges Defendants' NexGen product, website and Youtube video, all copy Ajax's. Plaintiff alleges injury to its business reputation as a result of Defendants' violations of the Lanham Act. Ajax further seeks injunctive relief to prohibit the sale of Defendants competing product developed through allegedly false misrepresentations on the quality and source of Defendants product and misappropriated trade secrets. It flows naturally that the sale of such a competing product would result in injury to Plaintiff. These injuries are "paradigmatic direct injury" in Lanham Act claims. *Lexmark*, 134 S. Ct. at 1393. These allegations are enough to show standing in light of a facial attack wherein all allegations are construed in favor of Plaintiff and any doubts of standing are construed in Plaintiff's favor. Thus, the Court finds Plaintiff has demonstrated standing to pursue its Lanham Act claims. However, the Court will examine whether the claims stated in the Second Amended Complaint plausibly state a claim upon which relief may be granted in the forthcoming opinion.

**Breach of Contract**

Plaintiff alleges Defendants breached a Confidentiality Agreement entered into by the parties on March 5, 2013, and attached to the original Complaint, by obtaining and unlawfully using Plaintiff's trade secrets. Defendants contend Ajax lacks standing to bring a breach of contract claim because neither Ajax nor Defendants were parties to the Agreement. The

Agreement reads in pertinent part: "This Agreement is made this 5th day of March, 2013 between Ajax Fasteners and Allfasters(sic)."  In the signature block it reads: "signed for and on behalf of Specifix Ajax Fasteners Pty Ltd. and Allfastners(sic) Pty Ltd."  Plaintiff in the original Complaint is identified as Acme Operations Pty. Ltd. d/b/a Ajax Engineered Fasteners.  Defendants are identified as Allfasteners USA LLC, All Fasteners Enterprises LLC and All Fasteners LA LLC.  In short, none of the signatories are parties to the original filed action.

The Court finds Plaintiff Ajax lacks standing to assert a breach of the Confidentiality Agreement.  Ajax did not sign the agreement, Ajax Engineered Fasteners is not a party to the Agreement and Defendants are not liable because none of the Defendant entities are parties to the Agreement.  Plaintiff responds that its Second Amended Complaint shows Ajax does business as Ajax Fasteners and its parent company Specifix are both parties to the Agreement.  However, the Agreement belies the allegations in the Complaint that the parties in the above - captioned case are parties to the Agreement.  They are not.  Therefore, Plaintiff lacked standing to bring a breach of contract claim against Defendants and the claim is dismissed without prejudice.

**Misappropriation of Trade Secrets**

Defendants contend Ajax failed to sufficiently describe the trade secrets allegedly misappropriated by Defendants.  It further contends Plaintiff failed to sufficiently allege an injury-in-fact arising from Defendants' misappropriation and admits it expressly authorized Defendants to disclose the alleged secrets.  Lastly, Defendants assert that Plaintiff failed to allege the measures it took to protect its secrets.

"In order to prevail on a misappropriation-of-trade-secret claim in Ohio, a plaintiff must establish: (1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret." *Thermodyn Corp. v. 3M Co.*, 593 F. Supp. 2d 972, 985 (N.D. Ohio 2008) citing *Heartland Home Finance, Inc. v. Allied Home Mortg. Capital Corp.,* 258 Fed.Appx. 860, 861 (6th Cir.2008). "The burden is on Plaintiff to prove that information has trade secret status." *Thermodyn*, 593 F.Supp.2d at 985. Whether information constitutes a trade secret is ordinarily a question of fact. *DeBoer Structures, Inc. v. Shaffer Tent & Awning Co.* 233 F.Supp.2d 934, 948 (S.D. Ohio 2002).

Ajax's original Complaint alleged that Defendants were authorized resellers of Plaintiff's ONESIDE products. These products were to be exclusively manufactured by Plaintiff. The resell arrangement did not authorize Defendants to manufacture directly or indirectly through third party manufacturers the ONESIDE product. Ajax further alleged that it granted Defendants access to Ajax's trade secrets, including engineering and material specifications, manufacturing technology and know-how, application information and similar confidential information. Ajax alleged Defendants requested the information in order to respond to customer questions. In fact, Ajax alleges Defendants took this information and used it to create a competing product, albeit one of inferior quality. Ajax alleged injury due to Defendants' use of Plaintiff's trade secrets in making and selling an identical product in direct competition with Ajax.

The Court finds Plaintiff's original Complaint alleged sufficient facts to establish standing to assert a misappropriation of trade secrets claim. Plaintiff alleged Defendants

were competitors of Plaintiff, used Plaintiff's trade secrets to develop a competing product identical to Plaintiff's albeit inferior in quality and has and/or will sell the product. Plaintiff requests monetary and injunctive relief. These allegations establish Plaintiff is engaged in commerce controlled by Congress and has suffered and will suffer injury for such misappropriation. Therefore, the Court denies Defendants' Motion to Dismiss based on Ajax's lack of standing to assert a theft of trade secrets claim. The Court will address whether Plaintiffs' allegations in its Second Amended Complaint fail to state a claim in a separate opinion.

Therefore, for the foregoing reasons, the Court grants Defendants' Motion to Dismiss on Plaintiff's claims for Patent Infringement and Breach of Contract, finding that Plaintiff Ajax lacked standing to assert these claims against Defendants. These claims are dismissed without prejudice. The Court denies Defendants' Motion to Dismiss Plaintiff's Lanham Act and Misappropriation claims insofar as the Court finds Plaintiff had standing to assert these claims. However, the Court will address in a subsequent opinion whether Plaintiffs' Second Amended Complaint fails under Fed. R. Civ. P. 12(b)(6).

IT IS SO ORDERED.

        s/ Christopher A. Boyko
        CHRISTOPHER A. BOYKO
        United States District Judge

Dated: May 12, 2016